IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WYATT ROSS DEREMER

PLAINTIFF

v.

OREGON DEPARTMENT OF CORRECTIONS,
and STATE OF OREGON; OREGON
DEPARTMENT OF CORRECTIONS MEDICAL
SERVICES; MS. SHERRY ILES; MS. LINDA
SIMON; MS. KAYCIE THOMPSON; MS.
MARCIA VENTURA; MS. JOHNSON, first
name unknown; MS. FOGG, first name
unknown; MS. ERIN REYES; MR. TROY
BOWSER; MR. KEVIN JACKSON; MR. CRAIG
PRINS; MS. ARNELL EYNON; MS. RONDA
DAVIS; MS. CHAVEZ, first name unknown;
MS. HOUTZ, first name unknown; MR.
MARK NOOTH; and MS. DUSTY HUNTER.
Each is sued individually, and in Their official
capacity.

DEFFENDANTS.

Case No. __2:24-cv-87-SB__

COMPLAINT

(Title II of the ADA; Rehabilitation Act; 42
U.S.C. §1983; 1st, 5th, 8th, 14th Amendments
of the United States Constitution; Article I,
Section 8th, 13th, 15th, 16th, 20th and 21st of
the Oregon Constitution; and Oregon State
Laws)

JURY TRIAL DEMANDED
VERIFIED COMPLAINT

1      1.    I, Wyatt DeRemer, Plaintiff, am acting *Pro Se* in this matter, I am incarcerated

2    and indigent.

3                                    **INTRODUCTION**

4      2.    Since 2018 Plaintiff has been attempting to receive accommodations for his

5    disabilities from ODOC so he can participate in the same programs and activities as other

6    inmates. Plaintiff wanted to earn a Master's Degree and Paralegal certification like other

1   inmates. In order for him to do so, he needs accommodations to surmount his lifelong learning

2   disabilities of dyslexia and dysgraphia. ODOC was at first reluctant to recognize Plaintiffs

3   disabilities. Then provided some accommodations then put restrictions on what the

4   accommodations could be used for violating federal and state law. ODOC makes rules *ex post*

5   *facto* and threatens Plaintiff of disciplinary sanctions if he violates them. ODOC has refused to

6   provide Text-to-Speech Software, and device that can convert text to audio. Accommodations

7   which ODOC is required by Federal and State Law to provide, that Plaintiff needs in order to be

8   put on the same playing field as other inmates. All accommodations which ODOC has denied

9   are accommodations which they currently have in their institutions.

10      3.      If Plaintiff had been able to earn a post-secondary degree, post-release

11   employment with a living wages would be greater, giving a higher quality of life and reducing

12   his risk of recidivism.  Not only has ODOC refused to comply with Federal and State Law, they

13   have attempted to subvert Plaintiff from advocating for his rights.

14                          **PRELIMINARY STATEMENT**

15      4.      This is an action for, injunctive, declaratory and equitable relief, including

16   compensatory damages, punitive damages, and attorney fees and costs, to redress violations of

17   Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §12101 *et seq.,* violations of

18   federal statutory rights pursuant to 42 U.S.C. §1983, and pursuant to Section 504 of the

19   Rehabilitation Act of 1973, as amended, 29 U.S.C. §701, *et seq.* (Rehabilitation Act), to redress

20   violations of 28 C.F.R. §35, O.R.S. §659A, Article 1 Sections Eight, Thirteenth, Fifteen, Sixteen,

21   twentieth and twenty-first of the Oregon Constitution, and the First, Fifth, Eighth and

22   Fourteenth Amendments to the U.S. Constitution.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40

## CONTENTS

INTRODUCTION ........................................................................................................ 1

PRELIMINARY STATEMENT ........................................................................................ 2

JURISDICTION .......................................................................................................... 4

VENUE ..................................................................................................................... 4

EXHAUSTION ............................................................................................................ 4

PARTIES ................................................................................................................... 5

STATEMENT OF FACTS ............................................................................................ 11

History Of Plaintiffs Learning Disabilities ............................................................ 12
ODOC Refused To Acknowledge Plaintiffs Disabilities ........................................ 13
March 2018 ....................................................................................................... 13
ODOC Refuses Acknowledgement Of Documentation In Their Possession .......... 15
January 2019 ..................................................................................................... 17
Plaintiff Issued Accommodations For Dysgraphia .............................................. 20
January 2020 ..................................................................................................... 21
Plaintiff Issued Only State Library Audio Book Accommodation For Dyslexia ...... 23
January 2021 ..................................................................................................... 25
Plaintiff Issued Dictation Accommodation for Dyslexia and Dysgraphia ............. 29
January 2022 ..................................................................................................... 35
Plaintiff Issued Portable Dictation Accommodation For Dyslexia And Dysgraphia ......... 36
ODOC Publicly Shame Plaintiff And His Disabilities ........................................... 38
ODOC Threatens Plaintiff For Using ADA Accommodations ............................... 42
ODOC Refuses to Provide Plaintiff Text-To-Speech Accommodations ................. 44
January 2023 ..................................................................................................... 45
January 2024 ..................................................................................................... 48

CAUSE OF ACTION .................................................................................................. 50

CLAIMS FOR RELIEF ............................................................................................... 50

COUNT I- Americans With Disabilities .......................................................... 50

COUNT II- Section 504 of the Rehabilitation Act ........................................... 60

COUNT III- Due Process ............................................................................... 66

COUNT IV- Retaliation ................................................................................. 71

COUNT V- Deliberate Indifference ................................................................ 74

COUNT VI- Intentional Discrimination ........................................................... 80

COUNT VII- Negligence ................................................................................ 83

COUNT VIII- Obstructing Confidential Communications .................................. 86

COUNT IV- Obstructing Freedom of Speech ................................................. 90

PRAYER FOR RELIEF ............................................................................................... 93

TABLE OF AUTHORITIES
TABLE OF PLAINTIFF'S EXHIBITS
PLAINTIFF'S EXHIBITS

1                                              **JURISDICTION**

2          5.       Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 in that this is a

3   civil action arising under the Constitution of the United States.

4          6.       Jurisdiction of the court is invoked pursuant to 28 U.S.C. §1343(a)(3) in that this

5   action seeks to address the deprivation, under color of state law, of rights secured by Acts of

6   Congress which provide for equal rights of persons within the jurisdiction of the United States.

7          7.       This Court is authorized to grant declaratory relief under 28 U.S.C. §2201 and

8   §2202.

9          8.       This Court has supplemental jurisdiction over Plaintiff's state-law claims

10  pursuant to 28 U.S.C. §1367.

11                                                **VENUE**

12         9.       This venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b)(2),

13  because a "substantial part of the events or omissions giving rise to the claim[s] occurred" in

14  this Judicial District.

15                                              **EXHAUSTION**

16         10.      The Plaintiff exhausted all available administrative remedies, through both ODOC

17  Grievance and Discrimination Complaint process. January, 2020, Plaintiffs attorney Mr. Robert

18  Repp, (OSB# 742687), filed an administrative notice of tort claim concerning the occurrences

19  and events complained of hereinafter. Complying with the Oregon Tort Claims Act for claims

20  under Oregon law against the State of Oregon and Oregon Department of Corrections (ODOC)

21  by sending his Notice of Tort Claim to Oregon Risk Management (ORM) within 180 days of the

1   notice of final agency denial of that claim, ORM has yet to give final notice due to

2   noncompliance from ODOC.

3       11.     Mr. Doug Leyshock, Claims Representative, ORM, directed Mr. Repp to contact

4   Ms. Ventura, ODOC Statewide AIC ADA Coordinator, to resolve the issue.

5       12.     As a result, Mr. Repp has worked with ODOC to resolve the issue without

6   litigation, ODOC was initially receptive. But has since stopped participating in resolution efforts.

7                                        **PARTIES**

8       13.     Plaintiff, Wyatt Ross DeRemer, is a citizen of the United States of America. At the

9   time of filing this action, Plaintiff has standing, as he is in custody of the Oregon Department of

10  Corrections (ODOC) at Two Rivers Correctional Institution (TRCI). At all times relevant, Plaintiff

11  was a resident of the city of Umatilla, Umatilla County, Oregon. Plaintiff is a qualified individual

12  with disabilities under 28 C.F.R. §35.108(b)(1)(ii) and (b)(2) in that Plaintiff was born with

13  Specific Learning Disabilities (SLD) including, but not limited to, Dyslexia and Dysgraphia,

14  affecting the major life activities including, but not limited to, learning, reading, writing,

15  concentrating, thinking, communicating, and interacting with others. 28 C.F.R. §35.108(c)(1)(i).

16  These disabilities affect Plaintiffs' ability to perform these major life activities due to difficulty

17  with, effort or time required to perform them, the duration of time it takes to perform, pain

18  experienced, and the length of time the major life activities can be performed.

19      14.     Defendant the Oregon Department of Corrections (ODOC) is an agency operated

20  by the State of Oregon. ODOC owns and operates prisons in Oregon, including TRCI and is

21  responsible for the inmates in its facilities pursuant to ORS 423.020 and 423.030. ODOC is a

22  public entity subject to Title II of the ADA. ODOC is a recipient of Federal financial assistance

1    and subject to Section 504 of the Rehabilitation Act. Defendant is sued individually, for

2    purposes of damages, and in its official capacity for purposes of injunctive relief.

3        15.    Defendant, Oregon Department of Corrections Medical Services, provides

4    medical care services to inmates confined within TRCI, including Plaintiff. Defendant is sued

5    individually, for purposes of damages, and in its official capacity for purposes of injunctive

6    relief.

7        16.    Defendant, Ms. Sherry Iles, at relevant times was a TRCI ADA Coordinator. Duties

8    include, in part, to ensure compliance with state and federal law governing access to

9    department programs, services, and activities for individuals with disabilities, to coordinate

10    efforts to comply with and carry out responsibilities under the ADA in regard to AICs and to

11    ensure that all approved accessibility requests are implemented. Defendant is sued individually,

12    for purposes of damages, and in her official capacity for purposes of injunctive relief.

13        17.    Defendant, Ms. Linda Simon, at relevant times was a TRCI ADA Coordinator.

14    Duties include, in part, to ensure compliance with state and federal law governing access to

15    department programs, services, and activities for individuals with disabilities, to coordinate

16    efforts to comply with and carry out responsibilities under the ADA in regard to AICs and to

17    ensure that all approved accessibility requests are implemented. Defendant is sued individually,

18    for purposes of damages, and in her official capacity for purposes of injunctive relief.

19        18.    Defendant, Ms. Kacie Thompson, at relevant times was a TRCI ADA Coordinator.

20    Duties include, in part, to ensure compliance with state and federal law governing access to

21    department programs, services, and activities for individuals with disabilities, to coordinate

22    efforts to comply with and carry out responsibilities under the ADA in regard to AICs and to

1    ensure that all approved accessibility requests are implemented. Ms. Thompson at times

2    relevant filled roles as Public Information Officer, and Executive Assistant to the

3    Superintendent. Defendant is sued individually, for purposes of damages, and in her official

4    capacity for purposes of injunctive relief.

5        19.    Defendant, Ms. Marica Ventura, at relevant times was the Statewide ADA

6    Coordinator for inmates. Duties include, in part, to carry out the Department's responsibilities

7    to comply with and oversee compliance of the Department with state and federal anti-

8    discrimination laws concerning incarcerated persons with disabilities including investigation and

9    resolution of accessibility requests, training, supervision and control of subordinates. Defendant

10   is sued individually, for purposes of damages, and in her official capacity for purposes of

11   injunctive relief.

12       20.    Defendant, Ms. Erin Reyes, at relevant times was the TRCI Superintendent.

13   Duties include, in part, to report to the Director, an Assistant Director, or an Administrator,

14   responsible for the delivery of program services or the coordination of program operations,

15   training, supervision and control of subordinates, overseeing, training, supervision and control

16   of subordinates and managing staff and inmates in their respective ODOC facility. Defendant is

17   sued individually, for purposes of damages, and in her official capacity for purposes of

18   injunctive relief.

19       21.    Defendant, Mr. Troy Bowser, at relevant times was the TRCI Superintendent.

20   Duties include, in part, to report to the Director, an Assistant Director, or an Administrator,

21   responsible for the delivery of program services or the coordination of program operations,

22   training, supervision and control of subordinates, overseeing, training, supervision and control

1    of subordinates and managing staff and inmates in their respective ODOC facility. Defendant is

2    sued individually, for purposes of damages, and in his official capacity for purposes of injunctive

3    relief.

4        22.     Defendant, Mr. Kevin Jackson, at relevant times was the TRCI Acting

5    Superintendent. Duties include, in part, to report to the Director, an Assistant Director, or an

6    Administrator, responsible for  the delivery of program services or the coordination of program

7    operations, training, supervision and control of subordinates, overseeing, training, supervision

8    and control of subordinates and managing staff and inmates in their respective ODOC facility.

9    Defendant is sued individually, for purposes of damages, and in his official capacity for purposes

10   of injunctive relief.

11       23.     Defendant, Ms. Shannon Johnson, at relevant times was the TRCI Medical

12   Manager and Registered Nurse. Duties include, in part, to report to administrators and is

13   responsible for overseeing the delivery of program services or coordination of program

14   operations, and training, supervision and control of subordinates. Defendant is sued

15   individually, for purposes of damages, and in her official capacity for purposes of injunctive

16   relief.

17       24.     Defendant, Ms. Ronda Davis, at relevant times was a TRCI Law Library

18   Coordinator. Duties include, in part, to provide general and law library services to inmates in

19   their respective facility, including delegated ADA services. Defendant is sued individually, for

20   purposes of damages, and in her official capacity for purposes of injunctive relief.

21       25.     Defendant, Ms. Houtz, (first name unknown), at relevant times was a TRCI Law

22   Library Coordinator. Duties include, in part, to provide general and law library services to

1    inmates in their respective facility, including delegated ADA services. Defendant is sued

2    individually, for purposes of damages, and in her official capacity for purposes of injunctive

3    relief.

4        26.    Defendant, Ms. Chavez, (first name unknown), at relevant times was a TRCI Law

5    Library Coordinator. Duties include, in part, to provide general and law library services to

6    inmates in their respective facility, including delegated ADA services. Defendant is sued

7    individually, for purposes of damages, and in her official capacity for purposes of injunctive

8    relief.

9        27.    Defendant, Ms. Dusty Hunter, at relevant times was the TRCI Toastmasters Club

10   Liaison. Duties include, in part, to communicate with program volunteers and is responsible for

11   the delivery of program services and coordination of program operations. Defendant is sued

12   individually, for purposes of damages, and in her official capacity for purposes of injunctive

13   relief.

14       28.    Defendant, Ms. Fogg, (first name unknown), at relevant times was the TRCI

15   Attorney Calls and Visits Coordinator. Duties include, in part, to report to administrators and is

16   responsible for overseeing the delivery of program services or coordination of program

17   operations, such as coordinating attorney calls and visits with inmates. Defendant is sued

18   individually, for purposes of damages, and in her official capacity for purposes of injunctive

19   relief.

20       29.    Defendant, Mr. Powleson, (first name unknown), at relevant times was the TRCI

21   Behavior Health Services Manager. Duties include, in part, to report to administrators and is

22   responsible for overseeing the delivery of program services or coordination of program

1   operations, and training, supervision and control of subordinates. Defendant is sued

2   individually, for purposes of damages, and in his official capacity for purposes of injunctive

3   relief.

4        30.      Defendant, Ms. Arnell Eynon, at relevant times was the TRCI Grievance

5   Coordinator. Duties include, in part, overseeing and insuring grievance and discrimination

6   complaints procedures are carried out and is responsible for communicating directly with the

7   AIC about grievance related matters. Defendant is sued individually, for purposes of damages,

8   and in her official capacity for purposes of injunctive relief.

9        31.      Defendant, Mr. Mark Nooth, at relevant times was the ODOC Eastside

10   Institutions Administrator. Duties include, in part, to report to the Director, Assistant Director,

11   or an Administrator, and is responsible for the delivery of program services or the coordination

12   of program operations, training, supervision and control of subordinates, and overseeing and

13   managing staff and inmates in ODOC facilities. Defendant is sued individually, for purposes of

14   damages, and in his official capacity for purposes of injunctive relief.

15        32.      Defendant, Mr. Craig Prins, at relevant times was the ODOC Inspector General.

16   Duties include, in part, overseeing internal review within executive agencies to ensure that

17   there is no waste or abuse of resources, to report to the Director, or an Assistant Director, or an

18   Administrator, training, supervision and control of subordinates, overseeing and managing staff

19   and inmates in ODOC facilities. Defendant is sued individually, for purposes of damages, and in

20   his official capacity for purposes of injunctive relief.

1   33.  The individually named Defendants were employees of ODOC at all times

2 relevant to this complaint. At all times relevant herein each Defendant acted under color of

3 state law and within the course of their employment.

4               **STATEMENT OF FACTS**

5   34.  Plaintiff re-alleges all relevant prior paragraphs.

6   35.  The International Dyslexia Association definition of dyslexia:

7   "Dyslexia is characterized by difficulties with accurate and/or fluent word
8   recognition and by poor spelling and decoding abilities. These difficulties typically
9   result from a deficit in the phonological component of language that is often
10   unexpected in relation to other cognitive abilities [...] Secondary consequences may
11   include problems in reading comprehension and reduced reading experience that
12   can impede growth of vocabulary and background knowledge.[1]"

13 The rate in which the general population experiences dyslexia is 3-20%; while the rate that

14 Adults in Custody (AIC) (also known as inmate or prisoner) experience dyslexia is 41-47.8%.[2]

15   36.  The National Institute of Neurological Disorders and Stroke define dysgraphia as:

16   "[A] neurological disorder characterized by writing disabilities. Specifically, the
17   disorder causes a person's writing to be distorted or incorrect. In children, the
18   disorder generally emerges when they are first introduced to writing. They make
19   inappropriately sized and spaced letters, or write wrong or misspelled words,
20   despite thorough instruction. For example, writing "boy" for "Child." Children with
21   the disorder may have other learning disabilities; however, they usually have no

---

[1]IDA Editorial Contributors, International Dyslexia Association, (2018, July 16). Accessed (Oct. 18th, 2021) https://www.dyslexiaida.org/definition-of-dyslexia/

[2]Fabelo T., Austin J., Angela G., Dyslexia Research Foundation of Texas, Inc., *The Impact of Ignoring Dyslexia and Reading Disabilities in the Criminal Justice System: What We Know and Need to Know* (Apr. 2004). Accessed (Oct. 18th, 2021) https://www.yumpu.com/en/document/read/31531072/the-impact-of-ignoring-dyslexia-and-reading-disabilities-in-the-

Moody K. C., Education Update Online, *Dyslexia in the Prison Population* (Dec. 2008). Accessed (Oct. 18th, 2021) https://www.educationupdate.com/archives/2008/DEC/html/spec-dyslexia.html

1   social or other academic problems. Cases of dysgraphia in adults generally occur
2   after some trauma.

3         The cause of the disorder is unknown, but in adults, it is usually associated
4   with damage to the parietal lobe of the brain. Treatment varies and may focus on
5   controlling   writing   movements   and   addressing   impaired   memory   or   other
6   neurological   problems.   Some   physicians   recommend   that   individuals   with
7   dysgraphia use computers to avoid the problems of handwriting. Some individuals
8   with the disorder improve their writing ability, but others, the disorder persists."[3]

9   37.     Dyslexia being one of the most pervasive disabilities which AICs face, Plaintiff

10  believed ODOC would be familiar with this disorder, and had ways to help mitigate the effects

11  of it. Plaintiff believed the defendants would be accommodating to the needs of AICs with this

12  disorder, and throughout held that belief do to its frequency. Plaintiff believes a reasonable

13  person will see the attempts Plaintiff made to work with Defendants to resolve this without

14  litigation.

15                         **History Of Plaintiffs Learning Disabilities**

16  38.     Plaintiff was diagnosed in 1997 as having Dyslexia and other Specific Learning

17  Disabilities (SLD). Plaintiff utilized accommodations in school from the 2nd grade through High

18  School. Plaintiff utilized accommodations in school, work and everyday life due to SLDs. He used

19  NaturalReader® (text-to-speech) software to listen to documents/books and Dragon Naturally

20  Speaking® (speech-to-text) software to write.

21  39.     In 2008, Plaintiff attended Portland State University (PSU) and Portland

22  Community College (PCC). He registered with the Disability Resource Center (DRC) at both PSU

23  and PCC; receiving accommodations for reading and writing including having text converted

[3]National Institute for Neurological Disorders of the National Institute of Health, *What is Dysgraphia?* Accessed (Oct. 15th, 2023) https://www.nind.nih.gov/health-information/disorders/dysgraphia

1    into an alternative format (digital document). With help of accommodations, Plaintiff graduated

2    from PSU, attended the East-Clackamas County Fire Academy, becoming a Firefighter and

3    Emergency Medical Technician.

4                    **ODOC Refused To Acknowledge Plaintiffs Disabilities**

5        40.    Plaintiff arrived at TRCI in August 2016.

6                                **March 2018**

7        41.    On the 12th, Plaintiff put ODOC on notice of his need for accommodations when

8    he sent an Inmate Communication Form (kyte) to Ms. Sherry Iles, TRCI ADA Coordinator:

9        "I am writing to request ADA services. I have been di[a]gnos[ed] dyslexic and have
10       dysgraphia. I have documentation via my last High School IEP [(Individualized
11       Education Plan)] which is what I used for document[ation] at Portland State
12       University. With dyslexia I have a hard time Reading, Writing, and Spelling. With
13       dysgraphia [i]t makes writing legi[bl]y very hard and for writing more than half a
14       page very difficu[l]t due to muscle f[a]tigue."

15   (Plaintiff's Exhibit (P. Ex.) 102, page (pg.) 2)

16       42.    Ms. Iles responded two days later asking for eligibility criteria to be met.

17   "[B]efore I approve the accom[mo]dations pleas[e] get something documented from Health

18   Serv[ices], please make an appointment with them." (P. Ex. 102, pg. 1).

19                                **April 2018**

20       43.    Plaintiff made an appointment and met with his Behavior Health Service (BHS)

21   provider Dr. Kimberly Humann, psychiatrist. Plaintiff meets with Dr. Humann remotely through

22   video. Dr. Humann was contracted by TRCI, through BHS. Due to working remotely, Dr. Humann

23   has no direct access to Plaintiffs medical file, she must request documentation from TRCI to be

24   sent to her. After informing Dr. Humann of the documentation he had of this disability, she told

25   him to give the documentation to the BHS Office Specialist to send to her, and that she would

1    then analyze it. The BHS Office Specialist would not take the documentation from the Plaintiff,

2    due to ODOC policy, it had to come from an outside organization. He filled out a request for

3    information form and the BHS Office Specialist sent it to PSUs DRC requesting his ADA

4    documentation. (P. Ex. 101, pg. 3-4).

5         44.      For nearly eight months Plaintiff attempted to get documentation sent to TRCI

6    Health Services to meet ODOC eligibility criteria to receive ADA accommodations. He sent over

7    30 kytes and had over 9 meetings trying to accomplish this.

8                                    **May 2018**

9                                    **June 2018**

10                                   **July 2018**

11                                   **August 2018**

12                                   **September 2018**

13        45.      On the 5th, Ms. Darcy Kramer from PSUs DRC faxed a copy of the documentation

14   to TRCI Health Services, she confirmed through her system, the fax went through. The

15   documentation was not entered into Plaintiffs medical file.

16                                   **October 2018**

17        46.      Plaintiff sent a kyte requesting accommodations to Ms. Linda Simon who took

18   over as TRCI ADA Coordinator.

19        47.      Ms. Simon responded attaching an application to the State Library of Oregon

20   Talking Book and Braille Library (OTBBL) program. "Health Services has advised that there is no

21   medical condition to warrant your other request." (P. Ex. 103). To qualify for the OTBBL with a

1    "Reading Disability—eligibility must be certified by a doctor of medicine (MD) or osteopathy

2    (DO)." (P. Ex. 104, pg. 4).

3                    **ODOC Refuses Acknowledgement Of Documentation In Their Possession**

4                                                    **November, 2018**

5          48.    On the 6th, Ms. Darcy Kramer, PSU DRC, faxed another copy of the

6    documentation, and mailed a copy to TRCI. (P. Ex. 105). Ms. Louisiana, TRCI Medical Records,

7    informed Plaintiff in a kyte that "the notes from Portland State came in and I gave them to BHS

8    Dept. for review." (P. Ex. 106).

9          49.    Ms. Beacroft, TRCI Education, told Plaintiff that documentation was mailed from

10   PSU and forwarded to education. She gave the documentation to him, since he was not a

11   student within TRCI education, she had no use for it.

12         50.    Plaintiff sent a kyte to Ms. Iles, "[a] couple of weeks ago I was informed that my

13   documentation was rec[e]ived." "I attached the state libra[r]y request form but it needs a

14   Doctors sign[a]ture, what next needs to be done?" Two days later Ms. Simon, responded to the

15   kyte sent to Ms. Iles, "I will not sign the form and do not see documentation from Health

16   Services." (P. Ex. 107).

17         51.    Two days later Plaintiff sent a kyte to Ms. Louisiana, to confirm that the

18   documentation was in his medical file. "The notes from Portland State were received on

19   11/6/18 and placed in your chart." ... "The notes were reviewed by the BHS dept. I checked with

20   them and they are not tracking any request either." (P. Ex. 108)

21         52.    Plaintiff sent a kyte attaching the OTBBL application to his Medical Provider, for a

22   doctor to sign it.

1    53.    Plaintiff attempted to get a copy of the document sent to the ADA Coordinator.

2    He sent a kyte and documentation back to Ms. Beacroft, asking her to send it to Ms. Simon so

3    he could receive ADA accommodations.

4    54.    Mr. Isaac, TRCI Education, responded for Ms. Beacroft saying "you do not qualify

5    for GED services and will need to identify why you need these accommodations to ODOC for

6    whatever purpose you are pursuing…"

7                                          **December 2018**

8    55.    Plaintiff sent a kyte to Ms. Simon informing her that Ms. Louisiana from Medical

9    Records, has confirmed the documentation was in his record. Ms. Simon said "[t]here is no

10   documentation in Health Services." (P. Ex. 109).

11   56.    Ms. Shannon Johnston, Registered Nurse, TRCI Medical Manager, responded to

12   Plaintiffs request for Medical Provider to sign OTBBL application:

13       "Mr. DeRemer there is no documentation in your medical file that would support
14       this, also the DOC providers would not be able to sign a form that is not an approved
15       DOC medical form. I do see that you graduated from high school and your work
16       history shows you were a firefighter—in order to achieve both of these your
17       dyslexia would appear to be mild."

18   (P. Ex. 110).

19   57.    Plaintiff met with Ms. Truax, TRCI BHS Counselor. Plaintiff saw the

20   documentation in his medical file. After looking at the documentation, she said, "she did not

21   know what to do and if TRCI would want to approve these types of accommodations." she

22   suggested he ask his BHS Provider Dr. Humann to sign the OTBBL application. Telling him she

23   would talk with Mr. Powelson, TRCI BHS Manager, about what to do next. (P. Ex. 101, pg. 6-7).

58.     Plaintiff sent a kyte attaching the OTBBL application to Dr. Humann. She

responded, "I will work on getting the documentation then get this back to you and the ADA

coordinator."

**January 2019**

59.     Plaintiff sent a kyte to Ms. Truax asking what to do next? She wrote "I spoke with

Mr. Powelson about your documentation. Unfortunately, you are going to have to continue

working through the ADA Services for this accom[m]odation." (P. Ex. 111).

60.     Plaintiff sent a kyte to Ms. Simon, explaining why he needed accommodations.

Stating he was told he needed to work through ADA Services in order to receive

accommodations. Ms. Iles responded asking "what accom[m]odation are you requesting?" (P.

Ex. 112).

61.     Plaintiff sent Ms. Simon a list of accommodations he was requesting, including a

way to type up documents and audio books. Ms. Iles responded, "Please continue to work

through Health Services. What need is for the audio books?"

62.     Mid-month, Plaintiff met with Dr. Humann, he asked her about the

documentation. She asked two times in December for it, but TRCI did not provide it. She stated

she would continue to ask. (P. Ex. 101, pg. 8).

63.     On the 28th, Ms. Iles met with Plaintiff. Plaintiff told Ms. Iles about the trouble he

was having getting approval for accommodations and having BHS sending documentation to Dr.

Humann so she could sign the OTBBL application. Ms. Iles informed him that she would look

into issuing a NEO, and said she would talk with BHS to try to get the issue resolved. (P. Ex. 101,

pg. 8-10). The NEO 2 Word Processor by AlphaSmart® (NEO) is a portable word processer akin to

1    a digital typewriter. The next day Plaintiff received a response from both Ms. Iles and Ms.

2    Simon:

3        "After our conversation on 1/28/19 and speaking w/BHS and Educational Srvs. here
4        at TRCI it has been determined that a NEO 2 machine does not meet your
5        [accom]modation request and not approved." ... "You will need to continue to work
6        through the State Library as they stated you would need a certification from a
7        medical Dr. to receive the audio books for the blind."

8    (P. Ex. 113).

9        64.    Dr. Humann wrote to the Plaintiff, informing him she had not received

10   documentation, and requested it again.

11                                    **February 2019**

12       65.    TRCI ADA coordinators, Education, Medical, and BHS refused to work with

13   Plaintiff on receiving ADA accommodations, so the Plaintiff filed a grievance "for the denial and

14   putting undo onus on Adult in Cust[o]dy (AIC) DeRemer on rece[i]ving ADA accom[m]odations."

15   (P. Ex. 114, pg. 1).

16                                     **March 2019**

17                                     **April 2019**

18       66.    On the 8th, Ms. Iles responded to the grievance, "...there is not sufficient

19   information to support your request for these ADA accommodations" ... "You do not have any

20   current information with Health Services that would support the requested accommodations,

21   ..." (P. Ex. 115).

22       67.    Plaintiff filed a grievance appeal, asking for:

23       "a qualified professional" ... "trained and knowle[d]ge [in] an[aly]zing Mr.
24       DeRemer['s] documentation" ... "(like Dr. Humann in BHS) to determin[e] if Mr.
25       DeRemer[']s request of re[a]sonable accom[mo]dations" ... "for the Major life
26       activit[ies] including but not limited to: reading, writing, learning, and

1    communi[c]ating for his disabilit[ies] of dyslexia and other sp[e]cific learning
2    disabil[ities] are founded, like they have been in the past."

3    (P. Ex. 116, pg. 1-4).

4                              **May 2019**

5                              **June 2019**

6        68.    On the 10th, Mr. Troy Bowser, TRCI Superintendent, responded to the appeal, "I

7    have reviewed your appeal, as well as all prior documentation relating to this grievance." ... "At

8    this time there is not sufficient information to support your request for ADA

9    accom[m]odations." (P. Ex. 117).

10       69.    Plaintiff filed a final grievance appeal; enclosing 28 C.F.R. §35 and a copy of the

11   PSU documentation. (P. Ex. 118, pg. 13).

12                              **July 2019**

13                             **August 2019**

14       70.    Plaintiff sent several Healthcare Requests to medical due to pain in his right hand

15   from writing.

16       71.    On the 29th, Mr. Mark Nooth, ODOC Eastside Institutions Administrator,

17   responded to the final appeal, "I have reviewed your appeal, and I concur with the response

18   you received from Superintendent T. Bowser." (P. Ex. 119).

19                           **September 2019**

20                            **October 2019**

21                           **November 2019**

22       72.    On the 27th, TRCI obstructed confidential communications with an attorney by

23   denying Mr. Robert Repp, Plaintiffs Attorney, a scheduled call with Plaintiff  by not forwarding

1    Mr. Repp's call to the unit attorney phone the Plaintiff had access to. Mr. Repp informed

2    Plaintiff he made several attempts to call. Mr. Repp scheduled the attorney call with Ms. Fogg,

3    TRCI Attorney Calls and Visits Coordinator.

4                                    **December 2019**

5           73.     On the 4th, TRCI obstructed confidential communications with an attorney by

6    denying Mr. Robert Repp, Plaintiffs Attorney, a scheduled call with Plaintiff. The call was

7    scheduled on a phone Plaintiff did not have access to. Mr. Repp attempted to call several times.

8    Mr. Repp scheduled the attorney call with Ms. Fogg, TRCI Attorney Calls and Visits Coordinator.

9           74.     The same day Plaintiff met with Dr. Humann, and asked if she received the

10   documentation? She said no, she asked numerous times, it was never sent. (P. Ex. 101, pg. 11).

11          75.     On the 5th,  Plaintiff met with Dr. Maney, Nurse Practitioner, Plaintiffs Primary

12   Care Provider, he agreed with the diagnosis of dysgraphia. Dr. Maney said he would request

13   writing accommodations from the ADA Coordinator. (P. Ex. 101, pg. 11-12).

14          76.     On the 10th, Ms. Simon met with Plaintiff, about an email from medical for

15   writing accommodations. Plaintiff requested accommodations requesting anti-fatigue writing

16   grips, and a way to type up documents. Ms. Simon said she would ask the Statewide ADA

17   Coordinator for approval. (P. Ex. 101, pg. 12-14).

18                       **Plaintiff Issued Accommodations For Dysgraphia**

19          77.     On the 17th, Plaintiff received only writing accommodations; a NEO and anti-

20   fatigue writing grip, 645 days (over 1 year 9 months) after he first requested ADA

21   accommodations.

1                                        **January 2020**

2          78.      On the 24th, Ms. Simon met with Plaintiff after Mr. Repp spoke with her.

3    Ms. Simon:              She said "your lawyer talked with me on the phone. He
4                           accused me of not helping you." As she said this her nostrils
5                           flared, and she curled slightly with a sneer. She said she had
6                           been working with me, and gave me accommodations.

7    Mr. DeRemer:            I explained my history attempting to get accommodations
8                           over the last two years, going through the grievance process
9                           and getting the run around.

10   Ms. Simon:              She said she did not know anything about the
11                          accommodations I requested. She said, "don't you have a
12                          NEO?"

13   Mr. DeRemer:            I said "I do." I described the issues I was having with it due
14                          to spelling.

15   Ms. Simon:              She said, "aren't you a tutor?"

16   Mr. DeRemer:            I said, "yes."

17   Ms. Simon:              She said, "why don't you get accommodations through
18                          education?"

19   Mr. DeRemer:            I said, "I am not eligible since I am not an enrolled student
20                          with TRCI or Blue Mountain Community College."

21   Ms. Simon:              She asked, "can't you just use a dictionary?"

22   Mr. DeRemer:            I explained that I can't spell a word close enough to use a
23                          dictionary.

24   Plaintiff handed Ms. Simon information about Dragon Naturally Speaking® a speech-to-text (S-T-

25   T) software used to write by dictating, NaturalReader® a text-to-speech (T-T-S) software used to

26   read electronic text, OmniPage® Optical Character Recognition (OCR) software used to convert

27   digitized documents into a word format (image to text, where T-T-S can be used), and

28   IntelReader® a hand-held device that scans documents and reads them out loud, designed for

29   dyslexics. She took the information saying she would bring this up at the next executive

1    meeting, telling Plaintiff she did not think any of them would be approved. (P. Ex. 101, pg. 14-

2    15).

3    79.    Later that month Ms. Simon returned the information and informed Plaintiff

4    none of the accommodations were approved.

5    **February 2020**

6    80.    On the 29th, Mr. Repp attempted to visit with Plaintiff at TRCI. Mr. Repp left a

7    message with Ms. Fogg the week before giving the date he was going to visit, and to call back if

8    there were any issues. Ms. Fogg never called back. TRCI obstructed confidential

9    communications with an attorney by denying Mr. Repp the ability to visit with the Plaintiff or

10    enter the institution.

11    **March 2020**

12    81.    On the 2nd, Plaintiff met with Ms. Fogg in response to a kyte he sent due to his

13    attorneys denied access. Ms. Fogg told him she never received a phone call from Mr. Repp, but

14    if she did, she gets a lot of calls from attorneys. She said she always calls back unless attorneys

15    leave long messages or don't answer when she calls, saying it is not her responsibility to get a

16    hold of them. (P. Ex. 101, pg. 16).

17    82.    On the 31st, TRCI obstructed confidential communications between Plaintiff and

18    Mr. Repp by denying Plaintiff to be let into the attorney phone room on his housing unit. Ms.

19    Whelan, Corrections Officer, told Plaintiff his call was being canceled. Ms. Whelan did not give

20    any explanation why the call was canceled. (P. Ex. 101, pg. 16-17). Mr. Repp was not notified

21    the call was canceled. Other AICs that day were able to have attorney calls. Plaintiff sent a kyte

22    to Ms. Fogg about the issue, she never responded. Plaintiff sent a second kyte May 28th, Ms.

1    Fogg responded "... I have no recollection as to why it was canceled, more than likely the

2    attorney canceled." (P. Ex. 120).

3                                      **April 2020**

4            83.      On the 2nd, TRCI obstructed confidential communications between Plaintiff and

5    Mr. Repp by denying Plaintiff a scheduled attorney call with Mr. Repp by scheduling it on a

6    phone Plaintiff had no access to.

7            84.      Plaintiff was denied the ADA accommodation of having another AIC write out his

8    Discrimination Complaint. Plaintiff filed a complaint, it was returned "due to non-compliance

9    with" ... "(DOC) Rule #006 (Discrimination Complaints) for the following reason(s):

10   Discrimination complaints must be legible and written within the appropriate space provided..."

11   (P. Ex. 121).

12           85.      Plaintiff sent a kyte to Ms. Simon, requesting permission to have help writing the

13   complaint per Oregon Administrative Rule. Ms. Simon responded, "you need to read it again.

14   She [(Ms. Enyon, TRCI Grievance Coordinator)] told you why it was denied, your writing had

15   nothing to do with it." Ms. Simon denied allowing ADA help with writing. He did not feel he

16   could correct the issue stated by Ms. Enyon without ADA help by another AIC,  and was forced

17   to drop the complaint. (P. Ex. 122).

18        **Plaintiff Issued Only State Library Audio Book Accommodation For Dyslexia**

19                                      **May 2020**

20           86.      On the 13th, Plaintiff met with Dr. Humann, she said she finally received the

21   documentation and agreed with the diagnosis of dyslexia. She no longer had the OTBBL

22   application, and asked him to send her another one. (P. Ex. 101, pg. 17). He sent her the OTBBL

1    application and asked her to inform the ADA Coordinator of his learning disabilities. ODOC had

2    been in possession of the documentation for 553 days (over 1.5 years).

3         87.    At this point 792 days (2 years 2 months) had passed since Plaintiff first

4    requested accommodations and had documentation which proved his disability.

5                                      **June 2020**

6                                      **July 2020**

7                                     **August 2020**

8         88.    On the 10th, Plaintiff was issued an audio book player through the OTBBL

9    program.

10        89.    Plaintiff continued requesting accommodations that afford equal opportunity

11   and meaningful access to them.

12                                  **September 2020**

13        90.    On the 29th, Plaintiff received a mail violation for sending a typed letter using the

14   NEO ADA accommodation. (P. Ex. 123). He filed a Discrimination Complaint against S. Darcy,

15   TRCI Mail Room.

16                                   **October 2020**

17        91.    On the 6th, Ms. Ridley, TRCI Assistant Superintendent, met with Plaintiff. She

18   informed him there was no way the mail room could have known he had an accommodation

19   since it was never recorded in his file. She asked him to drop the complaint, and hand delivered

20   the letter to the other AIC. (P. Ex. 101, pg. 17).

21        92.    Plaintiff went ahead with the complaint.

1                                  **November 2020**

2          93.     The obstruction from ODOC did not only extend to Plaintiff and his attorney. On

3    the 4th, Mr. Doug Leyshock, ORM Claims Representative, sent an email to Mr. Repp, stating "My

4    efforts to move forward with Mr. Deremer's tort claim have proven unsuccessful. I am still

5    awaiting documentation from DOC corroborating or refuting various allegations" ... "I don't

6    know when I will receive the response for information I've requested at this time."

7                                  **December 2020**

8                                  **January 2021**

9          94.     On the 4th, Plaintiff was moved into the Disciplinary Segregation Unit

10   (DSU)(solitary confinement) for quarantine due to contracting COVID-19, not for disciplinary

11   reasons. He was not allowed accommodations even though AICs in DSU were issued books to

12   read. Plaintiff was trapped in an empty white room, having nothing to keep him occupied.

13   Security staff withheld Plaintiffs prescription medication, exacerbating his anxiety, depression,

14   and thoughts of suicide; causing severe emotional distress. Plaintiff requested his

15   accommodations from DSU staff several times but was told "no." Plaintiff asked Ms. Simon for

16   his accommodations in a kyte. (P. Ex. 124). Plaintiff also sent a kyte to the DSU Corporal

17   requesting his ADA accommodations, per Oregon Administrative Rule. He never received a

18   response from the DSU Corporal.

19         95.     Ms. Simon responded stating Plaintiff would need to ask Mr. Heehn, DSU

20   Captain, for accommodations. (P. Ex. 124).

21         96.     Plaintiff filed a Discrimination Complaint against Ms. Simon for denying

22   accommodations while in DSU. (P. Ex. 125).

1       97.    On the 18th, Plaintiff was moved back to his regular housing unit after

2  quarantine.

3       98.    Mr. Kevin Jackson, TRCI Acting Superintendent, responded to the mail

4  violation Discrimination Complaint writing, "investigative findings support your claim

5  that your letter written to another AIC was indeed violated by the TRCI Mail room…"

6  "[a]t the time, mailroom staff did not realize that you were authorized to use a NEO

7  machine…" (P. Ex. 126). Plaintiff filed an appeal stating "I believe all the timing shows a

8  campaign of harassment for exercising my rights." (P. Ex. 127).

9       99.    On the 21th, Ms. Simon wrote the Plaintiff, asking him to "please complete the

10  attached form regarding your request for software/computer equipment per your attorney's

11  request". (P. Ex. 128). He filled out the Accessibility Request Form using the items from the list:

12      "Scanning Doc[uments] Gives Me The Ability To Convert Them To Audio, Giv[ing]
13      Me The Ability To Read Any Book (e[s]pecially college Text-Books),
14      Corr[e]spond[e]nce, ODOC Rules/Institution polic[ies]. The State Library Talking
15      Books Program has A limited inventory, And do[es] not have College Text-Books."

16  (P. Ex. 129 and 130).

17  Ms. Simon responded to the request, "spoke to Ms. Ventura, Statewide ADA Coordinator this is

18  to adv[i]se you [t]hat Ms. Ventura has approved the Dragon program for you to use. [Y]ou will

19  not rec[e]ive a laptop." Plaintiff assumed all other accommodations were denied. (P. Ex. 129,

20  pg. 2).

21      100.    Mr. Kevin Jackson, Acting Superintendent, responded to the grievance for

22  denying accommodations while in DSU, writing "Ms. L. Simon, ADA coordinator was assigned

23  the coordination of this investigation." Mr. Jackson said Plaintiff never requested

24  accommodations from DSU staff. (P. Ex. 131).

1                                                   **February 2021**

2               101.      Plaintiff wrote to Ms. Simon, "I got your respon[s]e from the Accessibility

3     Request form, what is the reason for den[y]ing requ[e]sted accom[m]odations?" Ms. Ventura,

4     Statewide AIC ADA Coordinator, responded, "Your AIC ADA Accessibility form was not denied it

5     was forwarded to my office for processing." (P. Ex. 132).

6               102.      On the 3ʳᵈ, 2021, Ms. Simon met with Plaintiff.

7     Ms. Simon:                    She said "we need to talk. I have been getting a lot of
8                                   complaints due to you."

9     She brought up statements that Plaintiff made in an electronic message to his father regarding

10    suggestions for the Discrimination Complaint Appeal. She asserted the information in his

11    message was wrong.

12    Mr. DeRemer:                  I asked her "why could you not have sent an email or called
13                                  captain Heehn? What prevented you from doing that? I
14                                  don't feel it is my job to tell a Captain how to do his job and
15                                  I    assumed    that   it   is   your   job   to   coordinate
16                                  accommodations."

17    Ms. Simon:                    She said "I probably should have contacted Captain Heehn."

18    Mr. DeRemer:                  I said "myself and other inmates on this unit have been
19                                  trying to get print offs (print from the Neo's) the last couple
20                                  months."

21    Ms. Simon:                    She said, "you are no different than any other AIC, and need
22                                  to wait the same as any other AIC to use the law library."

23    (P. Ex. 101, pg. 18-19).

24              103.      Plaintiff filed a Discrimination Complaint Appeal for denying accommodations in

25    DSU, stating "The whole time I was in DSU [for Covid,] I asked for my audio books &

26    p[re]scription medication." He also brought up concerns that Ms. Simon, the one the

1    Discrimination Complaint was filed against, was the one to do the investigation, against ODOC

2    Policy. (P. Ex. 132).

3        104.    On the 12th, Plaintiff sent Ms. Simon a kyte explaining his history of dyslexia and

4    why he needs accommodations. He wrote:

5        "I want to change, I want to better my[]self, and I want to have the best chance[]
6        of success for when I get out of prison. I want to get a graduate degree and
7        paralegal certificate like many other AIC[s] have been able to do here at TRCI [via]
8        correspondence classes[;] For this I need accommodations, it is impossible with out
9        them. I need to be able to write papers and letters independently not having to rely
10       on the kindness of other AIC's. I need to be able to read and understand books that
11       are not in the [OTBBL] Library program. I ask for these accommodations not to be
12       special[—]but just to be equal to other AIC's[,] so I can be[] the best version of
13       myself..."

14   Ms. Simon responded, "Noted[.]" (P. Ex. 133).

15       105.    Ms. Ventura responded to the Accessibility Request submitted in January. "[I]t

16   was determined the best software is Dragon and the best location, due to security measures, is

17   in the legal library. This program is to be used for your legal work." (P. Ex. 135).

18       106.    Ms. Eynon, TRCI Grievance Coordinator, returned the Plaintiffs Discrimination

19   Complaint Appeal for the mail violation stating "This case was reviewed at a recent AICCRC (AIC

20   Complaint Review Committee) meeting." (P. Ex. 136).

21                                          **March 2021**

22       107.    Mr. Craig Prins, ODOC Inspector General, responded to the Discrimination

23   Complaint Appeal for denying accommodations in DSU. "After a thorough investigation, Acting

24   Superintendent Jackson determined there was no basis for your complaint." He didn't address

25   the concern of Ms. Simon investigating herself. He also wrote "On March 4, 2021, the AICCRC

26   heard your appeal and determined the following: Your allegation of discrimination has been

1   carefully reviewed. The committee found there is no new information or reason to overrule or

2   change the original decision". (P. Ex. 137).

3                                              **April 2021**

4        108.    Plaintiff filed an ADA complaint to the United States Department of Justice (DOJ).

5   He marked the envelop as "Official Mail" following Or. Admin. R. The complaint was not

6   received by the DOJ.

7        **Plaintiff Issued Dictation Accommodation for Dyslexia and Dysgraphia**

8                                              **May 2021**

9        109.    Plaintiff used Dragon S-T-T software in the Law Library for the first time. He was

10  only allowed to use it once per week for two hours. He was unable to save a user profile, the

11  first hour of each session was devoted to training the program to recognize his voice.

12       110.    The next day Plaintiff sent a kyte to Ms. Ventura about concerns with how the

13  accommodation was being administered. He was concerned about his privacy while working on

14  legal work, how often he was able to use accommodations, and what he could use

15  accommodations for.

16       "[I]f I am deemed to need an accom[m]odation like dragon, why am I rest[ri]cted
17       in what the accom[m]odation is used[?]" … "[A]re you saying that Law Library is the
18       only ser[]vice that ODOC provid[e]s? Or that it is ok to provide an AIC with an
19       accommodation that is not effective in affording equal opportunity?"

20  (P. Ex. 138, pg. 2).

21       111.    Plaintiff wrote Mr. Prins asking why Mr. Jackson and Ms. Simon were able to

22  violate multiple ODOC Policies in pursuit of investigating the discrimination complaint? And

23  asked him to look into the situation. (P. Ex. 139). Matthew Stevens, Office Specialist 2,

1    responded for Mr. Prins, stating, "upon review, it has been determined that your discrimination

2    complaint was processed properly..." (P. Ex. 140).

3                                          **June 2021**

4         112.    Plaintiff filed a notice of tort to the Department of Administrative Services Risk

5    Management (ORM) for the denial of accommodations in DSU. ORM sent a "Notice of Denial"

6    writing, "...we are unable to verify request for ADA accommodations were made to staff in

7    DSU." (P. Ex. 141).

8         113.    Around June, Ms. Davis, TRCI Law Library Coordinator, started harassing Plaintiff

9    for using accommodations in the Library. Scrutinizing his writing, implementing unwritten

10   formatting rules, and determining what  Plaintiff could and could not write.

11        114.    The process for printing with the NEOs involved Plaintiff checking out a cord,

12   plugging in the NEO to an AIC computer, and transferring typed files. The files transferred at

13   typing speed (about 70 words per minute). Once the document was on the computer Plaintiff

14   formatted the document. Without formatting, documents printed from the NEO would have

15   .25" margins, single space, size 10 font, making letters hard for people to read.

16        115.    On the 13th, 2021, Plaintiff sent a kyte to Ms. Thompson, new TRCI ADA

17   Coordinator, asking to clarify rule for using the NEO and ADA computer in the law library.

18       "[I]t seems eve[r]y time I go to use accom[m]odations I am being singled out by the
19       Law Library coordinator, I do not want to be in trouble for using accom[m]odations
20       for rules I have never been told, I am under the impressi[o]n from Ms[.] Davis that
21       I am not to type up any legal notes or letters on my Neo? Do[es] that mean I am
22       not al[l]owed to do legal any thing except while in the law library?"

1    Ms. Thompson responded "[p]lease continue to work with Ms. Davis on typing & printing legal

2    work." "You are able to use the NEO for legal and personal use as long as it does not interfere

3    with other DOC policies/rules." (P. Ex. 142).

4                                    **July 2021**

5          116.    Plaintiff sent a kyte to Ms. Thompson, informing her, in the corridor, an AIC

6    Plaintiff didn't know, went up to Plaintiff and asked questions about legal work Plaintiff worked

7    on while in the library.

8          "…I do not beli[e]ve I can use Dragon and have any priv[a]cy while doing so,
9          e[s]pec[i]ally since all I can use it for is for stuff deemed priv[i]l[eged], which I would
10         legal[y] lose any right to that priv[i]l[e]ge for using the accom[m]odation. I again
11         want to inform you of this issue, and that my fear of what could have happened
12         has."

13   She responded "Thank you for your patience while we investigate options." (P. Ex. 143).

14                                   **August 2021**

15         117.    Plaintiff asked Ms. Thompson in a kyte about rules for the NEO.

16         "I do not want to get in trouble or end up in the hole for using the Neo. Nearly every
17         time I use the Neo it seems like I have to [j]ustify in some way to Ms. Davis why I
18         am using it. Recently Ms. Davis Questions what I can do in regards to formatting
19         Neo Documents."

20   Listing different Microsoft Word function like font, paragraph, bullets, bold, etc… he was not

21   allowed to edit due to Ms. Davis's unwritten rules. He wrote:

22         "my anxiety is getting very high every time I go to the law library, I don't know what
23         I am doing wrong, it feels like to me Ms. Davis is trying to find a way to get me in
24         trouble or thr[own] in the hole, this is stre[]ssing me out."

25   (P. Ex. 144).

26         118.    On the 26th, Ms. Davis refused to print off NEO documents for Plaintiff. It took

27   Plaintiff nearly 2 hours to get the documents transferred and formatted, what could have been

1   done in 45-60 minutes, without her restrictions. Ms. Davis asked her AIC Law Library Clerk, to

2   get Corrections Officer Mr. Holden. Plaintiff left the Library. (P. Ex. 101, pg. 20-21).

3        119.    When Plaintiff returned to his housing unit, he wrote a kyte to Ms. Thompson

4   about the encounter. Ms. Thompson never responded to the kyte.

5        120.    When Plaintiff put the kyte in the Unit mail box he was confronted by an AIC

6   who works for Ms. Davis and lived on the same unit. The AIC confronted Plaintiff for telling on

7   his boss. Plaintiff then sent another kyte to Ms. Thompson about the encounter with the AIC.

8   Ms. Thompson never responded to the kyte. (P. Ex. 101, pg. 21-22).

9        121.    Plaintiff mailed a Notice of Tort to ORM marking the envelope "Legal Mail" and

10   putting it in his Units mail box.

11                    **September 2021**

12        122.    The Plaintiff was officially recognized by TRCI for his conduct and behavior.

13      "Today, you are being recognized by a Work Supervisor, Counselor, BHS, or other
14      Staff member as going above and beyond what is expected of you. We appreciate
15      that you continue to have a positive attitude and do what is expected of you with
16      your conduct and/or programming. We know it isn't always easy to do what is right
17      and your efforts are not going unnoticed. Today, you are being presented with a
18      reward as our way of saying KUDOS and THANK YOU for making our job just a little
19      bit easier."

20   (P. Ex. 145).

21        123.    On the 2nd, Ms. Davis told Plaintiff to send Ms. Thompson a kyte to ask if he was

22   allowed to use ADA accommodations while the institution was on Tier-4 COVID restrictions. He

23   was allowed to use the Law Library for legal work, but Ms. Davis stated she did not want him to

24   use the Law Library for accommodations. He wrote, "I can do computer research, but cannot do

25   Neo format[t]ing while on the computer?" "[t]o me it feels like Ms. Davis is frustrated about

26   having to do ADA things. I feel like she is taking that frustration out on me." (P. Ex. 146).

1        124.    Plaintiff mailed a Notice of Tort to ORM marking the envelope "Legal Mail."

2  Plaintiff mailed the Notice of Tort in the Law Library. The AIC Law Library Clerk made two time

3  stamped photocopies of the envelope, gave one to the Plaintiff and the other was supposed to

4  be filed in the Law Library records.

5        125.    On the 14th, Plaintiff sent another kyte to Ms. Thompson, writing:

6       "I have sent several kytes about concer[ns] and violations to the ADA law. Why am
7       I not able to format letter[s] any more[?] [Ms.] Davis said it is due to Covid, but I
8       can use the computer for other things just not ADA [work], which is a blatant
9       violation of title II of the ADA."
10 (P. Ex. 147).

11        126.    Ms. Thompson responded to the kytes telling him he was no longer

12  allowed to format on the NEO due to COVID-19. (P. Ex. 147).

13        127.    On the 22nd, Plaintiff filed a Discrimination Complaint against Ms. Davis and Ms.

14  Thompson for violating  the ADA law and ODOC policy. (P. Ex. 148).

15        128.    Eight days later Ms. Thompson met with Plaintiff, and told him he was no longer

16  allowed to format any documents with the NEO because "no other inmate is able to format

17  personal documents, so in order to give equal access we are not allowing AICs with NEOs to

18  format personal documents." He responded, they do format letters every time they write,

19  writing bigger or smaller depending who they are writing to. Ms. Thompson never gave any

20  security reasons why the accommodations were being restricted. (P. Ex. 101, pg. 22-24).

21        129.    Ms. Eynon, TRCI Grievance Coordinator, returned the Discrimination Complaint

22  for corrections. (P. Ex. 149).

23                             **October 2021**

24        130.    Plaintiff refiled the amended Discrimination Complaint

1    131.    Plaintiff sent a letter to ORM asking if they ever received the two notices of tort

2    he mailed in August and September.

3    132.    On the 14th, an AIC Legal Assistant for Ms. Davis, who also lived on the same

4    housing unit as Plaintiff, spoke with Plaintiff. The AIC informed Plaintiff he knew about the

5    Discrimination Complaint that Plaintiff filed. The AIC, knew details of the complaint, and told

6    Plaintiff the complaint was not going to go forward. (P. Ex. 101, pg. 24-25).

7    133.    Concerned an AIC was told confidential information that only could have been

8    learned from staff who had seen the Discrimination Complaint, Plaintiff sent a kyte to Ms.

9    Reyes, TRCI Superintendent. (P. Ex. 150).

10    134.    On the 18th, Ms. Eynon, TRCI Grievance Coordinator, denied the Discrimination

11    Complaint against Ms. Thompson and Ms. Davis stating "[y]our complaint lacks information to

12    support your claim." (P. Ex. 151).

13                                            **November 2021**

14    135.    On the 13th, Mr. Herron, TRCI Lieutenant, met with Plaintiff regarding the kyte he

15    sent to Ms. Reyes about an AIC who was told information about the Plaintiffs confidential

16    Discrimination Complaint. Plaintiff asked him to investigate the matter so it did not happen

17    again. To Plaintiffs knowledge, no investigation took place. (P. Ex. 101, pg. 27-28).

18    136.    Mr. Herron, responded to the kyte for Ms. Reyes stating, "Discrimination and

19    Grievances should be handled in a Confidential manner. They leave the unit and go to the

20    co[o]rdinator[']s office. The staff listed should then prepare a response before it is reviewed

21    and sent back to you." (P. Ex. 150).

1    137.    Plaintiff received a letter from ORM informing him they did not receive either of

2    the  Notices of Tort. (P. Ex. 152, pg. 7). Plaintiff re-sent both Notices of Tort in one envelope,

3    handing them to the AIC Legal Library Clerk to mail. Plaintiff marked the envelope "Legal Mail."

4    138.    Plaintiff asked the AIC Legal Library Clerk to see the date-stamped photocopied

5    records of the mailings. Records were missing including the copy of the mailing from September

6    2nd.

7                                   **December 2021**

8    139.    On the 7th, Ms. Thompson met with Plaintiff informing him she was close to

9    getting him new accommodations. She said a committee decided he could not have the new

10    accommodations in a dorm unit, and he will need to move into a cell. Telling him he would be

11    moved to another honor housing unit. He told her he did not want to move into a cell, but

12    would move if that was his only option. (P. Ex. 101, pg. 28-29)

13                                   **January 2022**

14    140.    On the 23rd, Plaintiff sent Ms. Thompson a kyte requesting an update on

15    accommodations. She responded, "I appreciate your patience. We are working on this request

16    and hope to have a response soon." (P. Ex. 153).

17                                   **February 2022**

18                                   **March 2022**

19    141.    On the 24th, Plaintiff sent kytes to both Ms. Thompson and Ms. Ventura

20    requesting an update about the accommodations. Ms. Thompson responded "[w]e appreciate

21    your patience as we work this process out and deal with delays due to staffing and organizing

22    this process. Please see attached information regarding your Secure Book."

1    142.    The next day, Ms. Thompson and her husband, met with Plaintiff, saying it had

2    been a long process to get things approved. She said there had been issues with other AICs in

3    ODOC with legal work, and she is no longer allowing legal work to be done on either the NEO's

4    or Secure Book. A computer was going to be put back into the Law Library with Dragon on it,

5    where all legal work could be done. (P. Ex. 101, pg. 29-30).

6    **Plaintiff Issued Portable Dictation Accommodation For Dyslexia And Dysgraphia**

7    143.    On the 28th, Plaintiff exchanged the NEO for a Secure Book. The Secure Book had

8    Dragon® (formally known as "Dragon Naturally Speaking") S-T-T software on it.

9    144.    Several days later, Plaintiff wrote a letter about issues with accommodations.

10   First, for obstructing confidential communications with an attorney by denying attorney client

11   privilege rights in order to use accommodations for legal work. Second, the microphone on the

12   headset was to poor of quality for the Dragon program to work. Third, restrictions put on

13   Microsoft Word® made using the accommodation unnecessarily hard. Fourth, T-T-S

14   accommodations were still needed. And, fifth, Plaintiff addressed legal concerns Ms. Ventura

15   had with T-T-S accommodations and copyright laws. (P. Ex. 154).

16                                          **April 2022**

17   145.    On the 13th, Plaintiff was given a new headset with a microphone that worked

18   with the Dragon program.

19   146.    On the 20th, Mr. Repp, attorney, met with Plaintiff. Before Mr. Repp left TRCI, he

20   gave Ms. Thompson a copy of the letter Plaintiff wrote about issues with accommodations.

1    **May 2022**

2    147.    Plaintiff sent a letter to ORM to confirm if they received the Notices of Torts he

3    re-mailed in November. Plaintiff mailed the envelop marked "Legal Mail" from the Law Library.

4    Plaintiff never received a response.

5    148.    On the 11th, Ms. Thompson met with Plaintiff about the letter, which his father

6    emailed to Ms. Ventura. Ms. Thompson informed him he was now allowed to do legal work on

7    the Secure Book. He was granted access to a room on the unit where he could use S-T-T

8    software privately when needed.

9    Ms. Thompson:    She said that she talked with IT about the functions that are
10                    blocked on Word, and that all the functions that are blocked
11                    are the same ones that are blocked on all AIC computers,
12                    and she understood that part of using Word would be
13                    challenging. She asked Plaintiff to fill out another
14                    Accessibility Request Form for the T-T-S accommodations.

15    (P. Ex. 101, pg. 30-31).

16    149.    On the 16th, Mr. Shane Ridley, Office Specialist 2, sent Plaintiff three Interoffice

17    Memos stating an ADA Review was completed. "Upon review of your documentation, TRCI

18    Health Services confirmed that" ... "Secure Book", ... "anitifatigue grips", ... and "audio books"

19    are "appropriate accommodation[s] for your documented disabilit[ies]." (P. Ex. 155).

20    150.    That same day Plaintiff filed the Accessibility Request Form requesting

21    NaturalReader® T-T-S software, and an IntelReader® T-T-S device. These would allow him to

22    convert physical and electronic text, to audio. Stating:

23    "The two requested accommodations would help me read and comprehend:
24    documents and notices posted on housing units, mail, magazines, letters, books
25    (not in the State Library Books on Tape Program), newspapers, unit housing
26    guidelines, prison rules, ODOC policy's, etc... These accommodations will help me

1  to obtain the same results, and gain the same benefits, and reach the same level of
2  achievement as other AICs.

3  I am requesting accommodations under: **O.A.R. 291-111-0110 (4)(b):** 'qualified
4  readers;... screen reader software;... optical reader software;... and information
5  technology;...'; **O.R.S. 659.104(h):** assistive technology; **28 C.F.R. § 35.104(2):**
6  auxiliary aids and services includes 'qualified readers; optical readers; accessible
7  electronic and information technology'; **28 C.F.R. § 35.108(iii):** 'for example,
8  someone with a learning disability they may achieve a high level of academic
9  success, but may nevertheless be substantially limited in one or more major life
10  activities, including but not limited to, reading, writing, speaking, or learning
11  because of the additional time or effort he or she must spend to read, write, speak,
12  or learn compared to most people in the general population.'; **42 U.S.C. § 12103(1):**
13  auxiliary aids ... (B) qualified readers,...'"

14  Ms. Thompson responded, "we will consult departments needed and respond." (P. Ex. 156).

15                    **ODOC Publicly Shame Plaintiff And His Disabilities**

16                                    **June 2022**

17          151.    Around this time a sign mocking the Plaintiff and his disability was affixed in TRCI

18  East Law Library over the computer which Plaintiff is typically assigned to work. The sign said:

19  "ttayW remereD." The AIC Law Library Clerk, asked Ms. Houtz and Ms. Chavez, TRCI Law Library

20  Coordinators, if he could affix the label, they said yes. (P. Ex. 157).

21          152.    AICs have heard both Ms. Houtz and AIC Law Library Clerk verbally mock Plaintiff

22  and his disability, "both in and out of Wyatt's presence as well as discussing ways to minimize

23  any accom[m]odations they have to provide." (P. Ex. 157).

24          153.    On the 23rd, Plaintiff sent kytes to Ms. Thompson asking for an update about the

25  Accessibility Request Form. She did not respond.

26                                    **July 2022**

27          154.    On the 21st, Plaintiff sent kytes to Ms. Thompson asking for an update about the

28  Accessibility Request Form. She did not respond.

1                                           **August 2022**

2          155.     On the 16th, Plaintiff sent a kyte to Ms. Ventura asking for an update on the

3    Accessibility Request. She did not respond.

4          156.     Plaintiff also sent a letter to confirm if ORM received the Notices of Tort re-

5    mailed in November.

6          157.     Around this time, Ms. Erin Reyes, TRCI Superintendent; Ms. Ruby Ziegler,

7    Assistant Superintendent; and Ms. Tonya Ridley, TRCI Assistant Superintendent, were on TRCI

8    Housing Unit 12 talking with multiple AICs. An AIC asked about getting Secure Books, to which

9    Ms. Reyes said "[y]ou will never have one of those laptops in here[.]" The AIC said "AICs

10   throughout ODOC already have them, even AICs here at TRCI[.]" Ms. Reyes responded:

11            "that was a mistake and was not supposed to happen. They snuck those in without
12            us even knowing about it and I am going to have them taken away. I do not want
13            them in here and I am not even going to talk about it or consider it, there gone[.]"

14   (P. Ex. 158 & 159).

15                                          **September 2022**

16         158.     On the 1st, Plaintiff received a response from ORM stating they did not receive

17   any Notices of Torts. (P. Ex. 152, pg. 16). At least four pieces of mail marked "Legal Mail" or

18   "Official Mail" mailed from TRCI never made it to their intended recipients, resulting in Plaintiff

19   missing ORMs 180-day deadline barring him from pursuing issues further.

20                                           **October 2022**

21         159.     To get documents printed from the Secure Book, Plaintiff has to go to the Law

22   library. Files are transferred from the Secure Book to a USB drive. The USB is connected to the

23   Law Librarians computer. The Law Librarian then scans through the documents, prints them

24   and the AIC Clerk hands the documents to Plaintiff.

1        160.    On the 10th, Plaintiff attempted to get documents printed off from the Secure

2   Book. Plaintiff had 11 documents to print. About 20 minutes later Ms. Houtz, TRCI Law Library

3   Coordinator, she said she emailed Ms. Thompson and was told she could not print off most of

4   the documents. Saying she only printed off documents she felt were appropriate. Out of the 11

5   documents he received only two. (P. Ex. 101, pg. 32).

6        161.    Due to Ms. Houtz's statement, Plaintiff believes that all documents he prints

7   from the Secure Book were copied and emailed to Ms. Thompson by Law Library Coordinators,

8   including legal mail. Sometime around October 2022, while in the Law Library to print

9   documents from the Secure Book, the AIC Law Library Clerk, whispered to Plaintiff, "you know

10   they are emailing all of your documents to Ms. Thompson."

11       162.    On the 13th, Plaintiff was in the TRCI Chapel for a Religious Service Band practice.

12   Mr. Cardona, TRCI Chaplin, said a person told him Plaintiff could no longer use the Secure Book

13   for religious service activities, or anything other than personal use. Mr. Cardona said it made no

14   sense to him why, but he did not want Plaintiff to get in trouble and lose the Secure Book. (P.

15   Ex. 101, pg. 33).

16       163.    On the 19th, all ADA accommodation NEOs were confiscated from AICs at TRCI.

17       164.    On the 31st, Plaintiff was in the Law Library to get four documents printed from

18   the Secure Book, but only received three. Plaintiff participates in the TRCI Toastmaster club,

19   and is on the club's executive team. Plaintiff attempted to get an article he wrote for the district

20   newsletter to Ms. Hunter, TRCI Toastmasters Club Liaison. Ms. Hunter requested that all articles

21   for the newsletter be sent to her in a kyte for approval. He informed Ms. Chavez, TRCI Law

22   Library Coordinator, he did not receive the kyte for Ms. Hunter that enclosed the article and

1    information about a proposed fundraiser. Ms. Chavez told him that she did not think she could

2    print it off, and would have to check. Ms. Chavez then told him he was only allowed to print off

3    legal work. Plaintiff did not argue and said "ok." (P. Ex. 101, pg. 33).

4                                    **November 2022**

5           165.    On the 7th, Plaintiff attempted to get documents printed off from the Secure

6    Book. Ms. Chavez informed Plaintiff he could only print off what was on an approved form from

7    Ms. Thompson, and if something was not on it he would have to pay for it. (P. Ex. 101, pg. 34-35

8    & P. Ex. 160). After about one hour, Plaintiff asked Ms. Chavez about two documents that

9    weren't printed, one titled "Kyte Ms. Hunter," the other, a document typed for his role as a

10   Toastmaster Club Officer. Ms. Chavez said she emailed the documents to Ms. Thompson, and

11   Ms. Thompson said  they were not allowed to be printed. Plaintiff assumed all the files he had

12   to get printed were emailed to Ms. Thompson. Plaintiff believes Ms. Thompson was emailed a

13   confidential communication with his attorney Mr. Robert Repp titled "Legal Mail", against

14   ODOC policy. (P. Ex. 101, pg. 34-35).

15          166.    AICs who have NEOs as an accommodation are not charged for documents

16   printed. Starting on the 7th, Plaintiff was charged for any document not considered a letter or

17   correspondence to get printed. Paying for all personal work, work done for programs and

18   activities.  Some of the charges are: January 13th, 2023, charged  $1.80; February 16th, 2023

19   $6.60; February 27th, 2023, $1.70; May 30th, 2023, $0.40.

20          167.    On the 10th, Plaintiff attempted to get documents printed from the Secure Book.

21   Ms. Chavez only printed four of the five documents. He asked about the final document titled

22   "Kyte Ms. Hunter." She said she emailed Ms. Thompson and needed to get her approval. After

1  waiting about 15 minutes, Plaintiff informed Ms. Chavez that he was going to leave. She said

2  she still had not heard from Ms. Thompson, telling him she would ask Ms. Thompson to speak

3  with him about clarifying what the accommodation could and could not be used. (P. Ex. 101, pg.

4  35).

5                    **ODOC Threatens Plaintiff For Using ADA Accommodations**

6        168.    Later that day, Plaintiff was called to go to Security Operations. As Plaintiff

7  walked to Security Operations, his pulse was racing, hearing his heartbeat thrashing in his ears.

8  Plaintiff felt terror, when AICs are called to Security Operations they are usually in trouble. He

9  was afraid he was going to be sent to the hole (Disciplinary Segregation Unit). Mr. Bell,

10  Corrections Officer, let Plaintiff into Security Operations and asked him to have a seat. Plaintiff

11  was escorted into an interview room about 6 foot by 10 foot, with a one-way window, where

12  Ms. Thompson and Mr. Marvin, Correction Officer Sergeant, were sitting.

13        169.    Ms. Thompson said she wanted to talk to the Plaintiff about what could and

14  could not be printed off. Ms. Thompson gave Plaintiff a verbal warning for using his

15  accommodation for ODOC programs and activities for which he is a participant.

16   Ms. Thompson:    "I am only going to give you a verbal warning about the
17                    documents you have made on the computer." She went on
18                    to say, 'I could have written you up for a Major, do you know
19                    what that means?', 'you would be put-under investigation
20                    for un-authorized use of a computer, your accommodations
21                    would be taken away, and you would never have access to
22                    any computers or technology for the rest of your time in
23                    prison.'"

24   Mr. Marvin:      "and you would be sent to the and lose your housing."

25   Ms. Thompson:    "[T]he only thing allowed to be printed off for any program
26                    or activity has to be approved in writing beforehand by a
27                    TRCI staff member overseeing that program or activity. Not
28                    a volunteer, or anyone else, if you do not have it in writing

1                            from a staff member for each thing, then you cannot print it
2                            off."

3                            "she would 'write out a detailed list on what could and could
4                            not be done on the computer that way there is no issues for
5                            the law library coordinators and you in the future.'"

6                            She said "I talked with IT and they said that text-to-speech
7                            software is not approved, so there is nothing she could do
8                            for that."

9 Plaintiff asked Ms. Thompson about a T-T-S device similar to the IntelReader® he heard Education

10 was getting:

11        Mr. DeRemer:        "I had heard of some device that education was working on
12                            getting that was a pen that could read text out loud. I said 'I
13                            have never seen them, I don't know how well they would
14                            work, or if they would be practical.'"

15        Ms. Thompson:      "'yes I have been working with education on getting those.'
16                             She said she was not sure if they would be approved and 'if
17                            they are, you would not be able to have one, we can't just
18                            give devices that are used by inmates in education to
19                            inmates outside of education.'"

20 (P. Ex. 101, pg. 35-41).

21 Plaintiff was afraid for his life by the threat of being put in DSU. Losing his housing and getting

22 put on an "Active Unit" where the majority of assaults and extortions to inmates happen. If the

23 Plaintiff would be sent to DSU he would have to spend 1.5 years on an "Active Unit" continually

24 having to watch is back, asserting it with being put in "hell."

25        170.      Ms. Thompson never sent Plaintiff a detailed list on what could and could not be

26 done on the Secure Book. No other AIC has to get pre-approval from a TRCI staff member

27 ahead of time in order to participate in programs or activities in ODOC.

**ODOC Refuses to Provide Plaintiff Text-To-Speech Accommodations**

171.    Plaintiff was denied all T-T-S accommodations. From this point forward Plaintiff has been in fear that at any time, Ms. Thompson or other staff will take away his accommodations.

172.    The next day Plaintiff was taken off the scheduled Toastmaster meeting list. Plaintiff was the only AIC in the club who was removed. Mr. Keeney, Club Volunteer, called for him to come to the meeting. Mr. Keeney verified the email Ms. Hunter sent him asking to have AICs send her all articles to be approved. (P. Ex. 101, pg. 41).

173.    On the 14th, Plaintiff sent Ms. Ventura a letter about concerns he had after meeting with Ms. Thompson. Plaintiff informed her of the conversation he had with Ms. Thompson and provided notes from what was said. He said he was feeling "extremely stressed, anxious, and dejected. It seems like I am being targeted." ... "I have done everything above board with accommodations, I do not like being accused of doing shady things..." ... " Rules are being made *ex post facto* and myself and other AIC/volunteers are punished for not following them." He said "I do not believe it is appropriate or legal for her to have or read copies of letters/mail that is marked Legal Mail or Official Mail." He asked Ms. Ventura "[a]re accommodations considered a Right or a Privilege?" Plaintiff asked her to confirm that the text-to-speech accommodations were denied. "Finally, can you please inform TRCI to stop the illegally sanctioned public displaying of discriminatory acts against me." (P. Ex. 161).

174.    Ms. Ventura responded:

"[y]ou were approved to use the secure laptop to provide you access to family, friends, and official business. You were approved for free prints when you need to

1  communicate with family, friends, official business, AIC ADA Accessibility forms and
2  kytes. You are not authorized for free prints for any other reasons, unless assigned
3  and approved by a DOC staff."

4  (P. Ex. 162).

5  The discriminatory label mocking Plaintiff's disability that said "ttayW remereD" displayed on a

6  computer in the law library, approved by staff was still posted, causing stress and anxiety to the

7  Plaintiff.

8  **December 2022**

9  **January 2023**

10  175.    On the 18th, Plaintiff sent a kyte to Ms. Hunter, stating, "[M]s. Thompson asked

11  me to get p[er]mission from you so I can use m[y] ADA Accommodation to participate in

12  Toastmasters."

13  176.    Ms. Hunter responded writing "[s]orry this isn't going to be approved. This is

14  considered special treatment due to you having the ADA accom[m]odations." (P. Ex. 163).

15  177.    Plaintiff is unable to participate fully in the ODOC programs and activities he is

16  in: Toastmasters; Group Dialogue; Religious Services; Ms. Thompson and Ms. Ventura both

17  denied him the ability to use accommodations for those programs and activities. Ms. Thompson

18  and Ms. Ventura denied him access to ODOC and TRCI rules, procedures, and policy's in an

19  accessible format.

20  178.    Plaintiff wants to take correspondence classes from Adam State University (ASU)

21  for a Master in Business Administration, and Paralegal courses. ASU has verified they could

22  provide text in an electronic format, but he would need T-T-S accommodations. Education will

23  reduce Plaintiff's risk of recidivism and increase post prison employment prospects.

1      179.    The RAND Corporation conducted an extensive analysis on the effects of post-

2   secondary education on prisoners. They concluded that, among other things, "correctional

3   education programs were dramatically effective in reducing recidivism and there is some

4   evidence of improvements to post-release employment outcomes."[4] Oregon's recidivism rate is

5   57%[5]; however, a study shows this rate can drop dramatically for AICs who get a Master's

6   degree to 0%.[6]

7      180.    On the 30th, Ms. Janet Norton, ODOC Education Manager, wrote Plaintiff, "[y]es,

8   DOC is in support of those pursuing a post-secondary education!" (P. Ex. 164). Numerus AICs at

9   TRCI have participated in correspondence classes earning certificates, Associate degrees,

10   Bachelor degrees, and Master degrees with the support of TRCI and ODOC staff.

11      181.    ODOC is denying Plaintiff the same opportunity to increase post release success,

12   and the monetary benefit that obtaining an advanced degree would provide.

13                                    **February 2023**

14                                     **March 2023**

15      182.    Around this time many of the restrictions on Microsoft Word, that Plaintiff

16   requested to be removed, were unrestricted on AIC computers, except Plaintiffs Secure Book.

17   This included the Text-To-Speech software built into Microsoft Word, which Plaintiff was denied

18   access to on the Secure Book.

---

[4]Davis, L. M.; Steele, J. L.; Bozick, R.; Williams, M. V.; Turner. S.; Miles, J. N. V.; Saunders, J. & Steinberg, P. S, (Illustrated ed.) RAND Corporation, *How Effective Is Correctional Education, and Where Do We Go from Here?: The Results of a Comprehensive Evaluation* (2014).

[5]Sanchagrin, K., *et al, Oregon Recidivism Analysis.* Criminal Justice Commission State of Oregon (May, 2018).

[6]Robert Allen, Emory University, Department of Economics, *An Economic Analysis of Prison Education Programs and Recidivism* (2006).

1       183.    On the 2nd, TRCI education classrooms received a hand-held T-T-S device called a

2    "C610S Reader Pen Secure" by C-Pen®. It allows AICs to scan a word or line of text in a book

3    or document, it then reads it. Plaintiff was able to use this device at work as a tutor, and taught

4    other AIC students how to use it. The C-Pen® works like the IntelReader®. The C-Pen® only scans

5    one line of text at a time where the IntelReader® scans a whole page. At this point AIC's at TRCI

6    had access to both similar T-T-S software and hardware Plaintiff requested, yet Plaintiff was still

7    denied access to it.

8                                     **April 2023**

9                                     **May 2023**

10      184.    On the 8th, while Plaintiff was in the Law Library, the AIC Law Library Clerk

11    whispered to Plaintiff saying an AIC complained to the Oregon Department of Justice (ODOJ)

12    about the discriminatory label of Plaintiff's disability posted in the Law Library. The AIC

13    informed him the coordinators told him of the complaint, even though he was not supposed to

14    know. The AIC told him, "if anyone asks you, you need to say it was just a joke, OK."

15      185.    Plaintiff sent a letter to ODOJ. He informed them that TRCI staff are informing

16    AICs of confidential information, and about Plaintiffs concerns over the discriminatory label

17    that was posted in the Law Library.

18                                       **June 2023**

19      186.    During the week of the 25th, Plaintiff was informed by numerous AICs that Ms.

20    Ridley, TRCI Assistant Superintendent, in a meeting, stated the Secure Book should not have

21    gotten in, the AIC who got it went over their heads to get it in here, and no other Secure Books

22    were going to be let in.

1                                    **December 2023**

2          187.     On the 21st, Plaintiff attempted to pay to print a "Pre-Release Plan" as he starts

3    to plan for life after prison. Ms. Harn, TRCI Law Library Coordinator, informed Plaintiff she did

4    not think she could print off the "Pre-Release Plan" and told the Plaintiff she would ask Ms.

5    Thompson for clarification.

6                                    **January 2024**

7          188.     On the 2nd, the Plaintiff asked Ms. Harn if he was able to pay to print off the

8    "Pre-Release Plan," she said that Ms. Thompson said this one time he could, but had to delete

9    the document off of the Secure Book as soon as he did.

10         189.     On the 3rd, Ms. Thompson met with Plaintiff on Unit 11. Ms. Thompson informed

11   Plaintiff that he was not allowed to have a letter head, "since other AICs can't make a letter

12   head on a computer." The Letter head consist of the Plaintiffs initials followed by his name,

13   prison identification number and address to the prison. Ms. Thompson gave the Plaintiff a mail

14   violation (Ref #: 709271) for a correspondence Plaintiff mailed to another inmate. The violation

15   stated the letter head was "material that the Department deems to pose a threat or to be

16   detrimental to legitimate penological objectives." Ms. Thompson handed the Plaintiff the

17   envelop which the letter came in and confiscated the letter. The Plaintiff has used that "letter

18   head" for over a year sending letters to Officials in ODOC and inmates at least 19 times with no

19   incident.

20         190.     Ms. Thompson handed the Plaintiff a letter endorsed by both Ms. Thompson and

21   Ms. Ventura included *ex post facto* rules which the Plaintiff has to follow stating "document

1    produced, created, or printed with the Secure book (laptop) are not authorized, will be

2    considered abuse of the machine, and will result in confiscation."

3         191.    Plaintiff is suffering from extrema stress, Ms. Thompson continue to make up

4    rules' *ex post facto*, and unwilling to clarify rules they make, even when Plaintiff feels he is

5    following the rules which are made he is threatened with having all accommodations taken

6    away. At this point Plaintiff is unable to us ADA accommodations to: prepare for release, have a

7    return address along with his name and state identification number in correspondence, use

8    accommodations for education or post-secondary schooling, for any ODOC programs or

9    activities, or any other activity which another inmate in ODOC is able to participate in or do.

1        **CAUSE OF ACTION**

2        **CLAIMS FOR RELIEF**

3        **COUNT I- Americans With Disabilities**

4    **(Americans With Disabilities Act-Title II: 42 U.S.C. §12131 et seq.; 28 C.F.R. §35; Or. Rev.**
5              **Statue 659A.103; Or. Const. Art. 1 Sec. 13, 15, 16, 20 and 21)**

6    **(Against Defendants ODOC; ODOC Medical Services; The State of Oregon, Ms. Sherry Iles, Ms.**
7    **Linda Simon, Ms. Kacie Thompson, Ms. Marica Ventura, Ms. Erin Reyes, Mr. Troy Bowser, Ms.**
8        **Ronda Davis, Ms. Houtz, Ms. Chavez, Ms. Darcy Hunter, Mr. Mark Nooth)**

9        192.    Plaintiff re-alleges all relevant prior paragraphs.

10       193.    "The primary object of attention in cases brought under the ADA should be

11   whether entities covered under the ADA have complied with their obligations and whether

12   discrimination has occurred…" 28 C.F.R §35.101(b).

13       194.    "A State shall not be immune under the eleventh amendment to the

14   Constitution of the United States from an action in Federal or State court of competent

15   jurisdiction for a violation of this act" 28 C.F.R. §35.178.

16       195.    Defendants are required to not treat Plaintiff with "unnecessary rigor". Or.

17   Const. Art. 1 Sec. 13.

18       196.    Defendants are required to allow Plaintiff the ability for reformation and

19   personal responsibility. Or. Const. Art. Sec. 15.

20       197.    Defendants are prohibited from inflicting "cruel and unusual punishment." Or.

21   Const. Art. 1 Sec. 16.

22       198.    Defendants cannot implement rules that restrict disabled AICs from the same

23   privileges as other AICs. Or. Const. Art. 1 Sec. 20.

24       199.    Defendants cannot impose ex-post facto laws or rules. Or Const. Art. 1 Sec. 21.

1       200.   Defendants provide public service  es Including, but is not limited to: programs,

2   activities, academic and vocational education, mail, library, law library, and approved

3   postsecondary and correspondence courses. O.A.R. 291-111-0115(2); O.A.R. 291-113-0015(1);

4   and Or. Const. Art. 1 Sec. 41(1).

5       201.   Plaintiff has disabilities that substantially limit one or more of his major life

6   activities. Plaintiff has Specific Learning Disabilities (SLDs) including but not limited to dyslexia

7   and dysgraphia. Plaintiff is a qualified individual with a disability under the ADA.

8       202.   At all relevant times, Defendants were aware of Plaintiff's disabilities.

9       203.   Defendants discriminated against Plaintiff by excluding him from or denying him

10   an equally effective opportunity to participate in the benefits of Defendants' services,

11   programs, or activities. OAR 291-145-0005 (3)(a).

12       204.   Defendants denied Plaintiff the benefits of Defendants' services, activities and

13   programs by failing to comply with 28 C.F.R. §35.107 and 28 C.F.R. §35.106, which require

14   public entities to designate and provide notice of a responsible employee to coordinate efforts

15   to comply with and carry out responsibilities of Title II of the ADA.

16       205.   Defendants denied Plaintiff the benefits of Defendants' services, activities and

17   programs by failing to comply with 28 C.F.R. §35.130, which prohibits public entities from

18   discriminating against qualified individuals with disabilities. Causing, in part, Plaintiff to suffer

19   pain, anxiety and stress by forcing him to write without the use of accommodations in

20   programs and activities.

21       206.   Defendants denied Plaintiff the benefits of their services, activities and programs

22   by imposing eligibility criteria that screen out or tend to screen out individuals with disabilities

1    from fully and equally enjoying any service, program, or activity provided to other AICs by the

2    defendant's. 28 C.F.R. §35.130(b)(8).

3        207.    Defendants denied Plaintiff the benefits of Defendants' services, activities and

4    programs by failing to provide Plaintiff with text-to-speech software and devices. Including

5    "auxiliary aids and services[,]" "screen reader software[,]" "optical readers[,]" and "accessible

6    electronic and information technology[.]" 28 C.F.R. §35.104(2).

7        208.    Defendants denied Plaintiff the benefits of their services, activities and programs

8    by not providing institution rules, ODOC policies, procedures, or notices in an accessible format

9    for Plaintiff, after requested. Expecting Plaintiff and other AICs with reading disabilities to

10    follow rules and procedures not given in an accessible format.

11        209.    Defendants denied Plaintiff the benefits of their services, activities and programs

12    by not providing Plaintiff with the same aids, benefits, or services that is equal to and provided

13    to other AICs by putting restrictions on Microsoft Word® making the use of accommodations

14    unnecessarily hard and restricted. Violating 28 C.F.R. §35.130(b)(1)(iv).

15        210.    Defendants denied Plaintiff the benefits of Defendants' services, activities and

16    programs by charging Plaintiff to use ADA accommodations. Violating 28 C.F.R. §35.130(f),

17    which prohibits Agency's from charging to use ADA accommodations.

18        211.    Defendant, Ms. Sherry Iles, knew or should have known that her actions were in

19    violation of the ADA Act denying Plaintiff the ability to access and utilize accommodations for

20    ODOC services, programs and activities thereby causing Plaintiff to be deprived of equal

21    participation as other AICs in ODOC care. Once Plaintiff requested with a need of

22    accommodation Defendant had a mandatory obligation to engage in good faith in an informal

1    process to see if a reasonable accommodation would have been possible. Knowing that, she still

2    failed to act upon that likelihood.

3         212.    Defendant, Ms. Linda Simon, knew or should have known that her actions were

4    in violation of the ADA Act denying Plaintiff the ability to access and utilize accommodations for

5    ODOC services, programs and activities thereby causing Plaintiff to be deprived of equal

6    participation as other AICs in ODOC care. Once Plaintiff requested with a need of

7    accommodation Defendant had a mandatory obligation to engage in good faith in an informal

8    process to see if a reasonable accommodation would have been possible. Knowing that, she still

9    failed to act upon that likelihood.

10        213.    Defendant, Ms. Kacie Thompson, knew or should have known that her actions

11   were in violation of the ADA Act denying Plaintiff the ability to access and utilize

12   accommodations for ODOC services, programs and activities thereby causing Plaintiff to be

13   deprived of equal participation as other AICs in ODOC care. Once Plaintiff requested with a

14   need of accommodation Defendant had a mandatory obligation to engage in good faith with an

15   informal process to see if a reasonable accommodation would have been possible. Knowing

16   that, she still failed to act upon that likelihood.

17        214.    Defendant, Ms. Marica Ventura, knew or should have known that her actions

18   were in violation of the ADA Act denying Plaintiff the ability to access and utilize

19   accommodations for ODOC services, programs and activities thereby causing Plaintiff to be

20   deprived of equal participation as other AICs in ODOC care. As the ODOC State wide ADA

21   Coordinator who trains, supervise, and controls all subordinate institution ADA Coordinators,

22   she chose to condone the actions and sanctioned the behavior of her subordinates continuing

1    to deprive Plaintiff of equal access to accommodations. Once Plaintiff requested with a need of

2    accommodation Defendant had a mandatory obligation to engage in good faith with an

3    informal process to see if a reasonable accommodation would have been possible. Knowing

4    that, she still failed to act upon that likelihood.

5        215.    Defendant, Ms. Erin Reyes, knew or should have known that her actions were in

6    violation of the ADA Act when she was made aware of Plaintiff's need for accommodations yet

7    allowed the Plaintiff to suffer unnecessary harm and other injury's by being denied

8    accommodations. Being the head administrator at TRCI, who trains, supervise, and controls all

9    subordinate ODOC employees, her actions and inactions condoned and sanctioned the abuse

10   suffered by the Plaintiff at the hands of her subordinates. Knowing that, she still failed to act

11   upon that likelihood.

12       216.    Defendant, Mr. Troy Bowser, knew or should have known that his actions were

13   in violation of the ADA Act when after he was made aware of violations to Federal Laws and

14   Federal Rules in Plaintiffs Grievance Appeal. Defendant had the power to overturn Ms. Simons

15   decision to deny Plaintiff access to ADA service. Being the head administrator at TRCI, who

16   trains, supervise, and controls all subordinate ODOC employees, his actions and inactions

17   condoned and sanctioned the abuse suffered by the Plaintiff at the hands of his subordinates.

18   Knowing that, he still failed to act, continuing to deprive Plaintiff of equal access to

19   accommodations.

20       217.    Defendant, Ms. Ronda Davis, knew or should have known that her actions were

21   in violation of the ADA Act by putting restrictions and eligibility criteria on what

1   accommodations could be used for outside her role and contrary to ODOC Policy. Knowing that,

2   she still failed to act, continuing to deprive Plaintiff of equal access to accommodations.

3       218.   Defendant, Ms. Houtz, knew or should have known that her actions were in

4   violation of the ADA Act by putting restrictions and eligibility criteria on what accommodations

5   could be used for outside her role and contrary to ODOC Policy. Knowing that, she still failed to

6   act, continuing to deprive Plaintiff of equal access to accommodations.

7       219.   Defendant, Ms. Chavez, knew or should have known that her actions were in

8   violation of the ADA Act by putting restrictions and eligibility criteria on what accommodations

9   could be used for outside her role and contrary to ODOC Policy. Knowing that, she still failed to

10  act, continuing to deprive Plaintiff of equal access to accommodations.

11      220.   Defendant, Ms. Darcy Hunter, knew or should have known that her actions were

12  in violation of the ADA Act when she denied Plaintiff the ability to participate fully in programs

13  and activities with using ADA accommodations. Knowing that, she still failed to act, continuing

14  to deprive Plaintiff of equal access to accommodations.

15      221.   Defendant, Mr. Mark Nooth, knew or should have known that his actions were in

16  violation of the ADA Act after he was made aware of violations to Federal Laws and Federal

17  Rules in Plaintiffs Grievance Appeal. Defendant had the power to overturn Mr. Bowers decision

18  to deny Plaintiff access to ADA services. The Defendant had the power to overturn Mr. Bowers

19  decision to deny Plaintiff access to ADA services As an ODOC Administrator with higher rank

20  over all of the defendants, who trains, supervise, and controls all subordinate ODOC

21  employees, he chose to condone the actions and sanctioned the behavior of his subordinates

1    continuing to deprive Plaintiff of equal access to accommodations. Knowing that, he still failed

2    to act upon that likelihood, and denied Plaintiff access to Accommodations.

3        222.    Defendants failed to conduct any assessment of Plaintiff's disability or the

4    auxiliary aids or accommodations that would ensure Plaintiff could effectively participate in

5    learning, reading, writing, concentrating, thinking, communication, interacting with others and

6    equal participation in and benefit from ODOC services.

7        223.    Defendants' actions were intentional, purposeful and conducted with a

8    deliberate indifference toward Plaintiffs rights and mental wellbeing. Defendants' were aware

9    that they are required to provide requested accommodations per ADA, the Rehabilitation Act,

10   Oregon Revised Statues, Oregon Administrative Rules, Certified Federal Rules, and Oregon

11   Department of Corrections Policies.

12       224.    Defendants knew Plaintiff requested Auxiliary aids for the major life activities

13   including but not limited to learning, reading, writing, concentrating, thinking, communication,

14   interacting with others and accommodations for his disability. Specifically, for Plaintiffs ability

15   to perform these major life actives, due to the difficulty, effort or time required to perform

16   them, the duration of time it takes to perform, pain experienced when writing, and the length

17   of time the major life activities can be performed. Plaintiff has made at least 14 requests for

18   accommodations: March 12th, 2018; October 1st, 2018; November 27th, 2018; December 5th,

19   2018; January 15th, 2019; February 24th, 2019; April 21st, 2019; June 26th, 2019; December 10th,

20   2019; January 24th, 2020; January 4th, 2021; January 24th, 2021; May 11th, 2022; May 16th, 2022.

21   Defendants disregarded Plaintiff's request for accommodation without making any effort to

22   determine if it was possible to accommodate Plaintiffs requests.

1    225.    Defendants' actions constitute discrimination under Title II of the ADA and ORS

2  659A.103.

3    226.    As a result of Defendant's unlawful actions, Plaintiff suffered and continues to

4  suffer loss of privileges, loss of access to programming, humiliation, anxiety, distress, and

5  impairment of his personal dignity and right to be free from discrimination or interference with

6  his statutory and constitutional rights.

7    227.    Plaintiff suffered, and continues to suffer, economic damages, including, but not

8  limited to, loss of employment opportunities. Plaintiff's economic damages are not expected to

9  exceed $400,000. Plaintiff reserves the right to amend this amount prior to or during trial, as

10  the evidence requires.

11    228.    Plaintiff is entitled to injunctive relief against Defendants, including, but not

12  limited to, an order prohibiting Defendants from continued discrimination against all persons

13  with disabilities by refusing to provide adequate auxiliary aids to Specific Learning-Disabled

14  persons, and an order requiring:

15    229.    a) Defendants to conduct individualized assessments by trained professionals of

16  Specific Learning-Disabled prisoners' disabilities and the auxiliary aids or accommodations that

17  would ensure equal access to the major life activities including but not limited to learning,

18  reading, writing, concentrating, thinking, communication, interacting with others, equal

19  enjoyment and participation of ODOC services. Or accept all documentation needed to prove

20  eligibility of accommodations complying with 28 C.F.R. §35.130(b)(8) and O.R.S. 421.084(1)(a).

21    230.    b) Give primary consideration to disabled prisoners preferred auxiliary aids

22  complying with 28 C.F.R. §35.160(b)(2).

1    231.    c) Treat accommodations as a right not a privilege that can be taken away.

2    Complying with 28 C.F.R. §35.160(b)(1).

3    232.    d) Establish uniform policies and procedures for promptly supplying auxiliary aids

4    complying with 28 C.F.R. §35.130(b)(7)(i).

5    233.    e) Allow accommodations to be used in the Disciplinary Segregation Unit by

6    disabled AICs. 28 C.F.R. §35.130(b)(7)(i) and 28 C.F.R. §35.160(b)(1).

7    234.    f) To stop charging prisoners with disabilities for using accommodations,

8    complying with 28 C.F.R. §35.130(f).

9    235.    g) Defendants to allow the acquisition of Text-to-Speech software and Text-to-

10   Speech devices to be used as ADA accommodations, including but not limited to IntelReader®

11   device, and NaturalReader® software. Complying with 42 U.S.C. §12103(1)(B), O.R.S.

12   659A.104(h), 28 C.F.R. §35.104(2) and O.A.R. 291-111-011(4)(b).

13   236.    h) Defendants to stop retaliating against inmates and intimidating inmates for

14   requesting and using accommodations complying with 28 C.F.R. §35.134.

15   237.    i) Defendants to allow the use of accommodations for all programs, aids,

16   benefits, services and activities that inmates are able to participate in without eligibility criteria

17   and not to limit the complying with 28 C.F.R. §35.130(b)(vii) and 28 C.F.R. §35.130(a).

18   238.    j) Provide training on learning disabilities, executive functioning, and working

19   memory issues to all staff who interact with prisoners on how to work best with this

20   population.

21   239.    k) Provide all rules, ODOC procedure, ODOC Policy's in an accessible format

22   including but not limited to audio format.

1       240.    Plaintiff is entitled to compensatory damages for emotional pain, suffering,

2 inconvenience, mental anguish, loss of enjoyment of life, loss of equal access and participation

3 to programs, services, and other non-pecuniary losses in an amount to be proven at trial, here

4 alleged to be $1,500,000. Plaintiff should also be entitled to award of his economic loss in an

5 amount to be proved at trial, here alleged to be $400,000.

6       241.    To the extent any amount awarded to Plaintiff is for damages occurring prior to

7 the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate

8 from the date the damage occurred until the date of judgment.

9       242.    Plaintiff is entitled to an award of punitive damages in an amount to be fixed by

10 a jury at the time of trial, here alleged to be $5,000,000.

11       243.    Pursuant to 42 U.S.C. §§ 1988 and 2000e-5; 28 C.F.R. §35.175, Plaintiff is entitled

12 to an award of attorney's fees, expert witness fees, and all costs incurred.

13       244.    Plaintiff is entitled to post judgment interest on all damages, costs, expenses,

14 and fees from the date of judgment until the date paid.

1    **COUNT II- Section 504 of the Rehabilitation Act**
2    **(Section 504 of the Rehabilitation Act of 1973: 29 U.S.C. Section 794)**

3    **(Against Defendants ODOC; ODOC Medical Services; The State of Oregon; Ms. Sherry Iles; Ms.**
4    **Linda Simon; Ms. Kacie Thompson; Ms. Marica Ventura; Ms. Erin Reyes; Mr. Troy Bowser; Ms.**
5    **Ronda Davis; Ms. Houtz, Ms. Chavez; Ms. Darcy Hunter; Mr. Mark Nooth)**

6    245.    Plaintiff re-alleges all prior paragraphs.

7    246.    Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794, prohibits

8    discrimination against people with disabilities by recipients of federal funding, and provides "no

9    otherwise qualified handicapped individual . . . shall, solely by reason of her or his handicap, be

10    excluded from participation in, be denied the benefits of, or be subjected to discrimination

11    under any program or activity receiving federal financial assistance."

12    247.    Plaintiff has Specific Learning Disabilities (SLD) including but not limited to

13    dyslexia and dysgraphia, accordingly, is a qualified individual with a disability or handicap under

14    the Rehabilitation Act.

15    248.    Plaintiffs' disabilities substantially limit one or more major life activities including

16    but not limited to learning, reading, writing, concentrating, thinking, communication,

17    interacting with others and accommodations; Plaintiff has a record of such impairment.

18    249.    At all times material, Defendants are recipients of Federal financial assistance for

19    their programs and activities.

20    250.    Defendants' actions and omissions as described above violated Plaintiff's rights

21    under the Rehabilitation Act by excluding him or denying him the benefits of their services on

22    the basis of a disability.

23    251.    Defendants intentionally discriminated against Plaintiff through its actions and

24    omissions alleged above by being aware of their obligations to address Plaintiff's needs and

1    Federally protected rights, and by failing to act at a time when it was required to protect his

2    rights. The defendant's failures caused the Plaintiff to suffer pain by forcing him to write

3    without the use of accommodations in programs and activities.

4        252.    Specifically, Defendants denied Plaintiff the ability to participate fully in the

5    major life activities including but not limited to learning, reading, writing, concentrating,

6    thinking, communication, interacting with others and accommodations by refusing to provide

7    Plaintiff with adequate accommodations to allow him to understand and participate in the

8    major life activities including but not limited to academic and vocational education, mail,

9    library, law library, and approved postsecondary and correspondence courses, or including

10   proper auxiliary aids.

11       253.    Defendants actions caused Plaintiff to sustain emotional distress, psychological

12   trauma, humiliation, embarrassment, fear  and damages due to Defendants' violations of the

13   Rehabilitation Act.

14       254.    Defendant Ms. Sherry Iles, knew or should have known her actions violated the

15   Rehabilitation Act and deprived Plaintiff of the ability to utilize accommodations and participate

16   in ODOC programs and activities to the same level as others in ODOC care. Once Plaintiff

17   requested with a need of accommodation Defendant had a mandatory obligation to engage in

18   good faith with an informal process to see if a reasonable accommodation would have been

19   possible. Knowing that, she still failed to act upon that likelihood.

20       255.    Defendant Ms. Linda Simon, knew or should have known her actions violated the

21   Rehabilitation Act and deprived Plaintiff of the ability to utilize accommodations and participate

22   in ODOC programs and activities to the same level as others in ODOC care. Once Plaintiff

1    requested with a need of accommodation Defendant had a mandatory obligation to engage in

2    good faith with an informal process to see if a reasonable accommodation would have been

3    possible. Knowing that, she still failed to act upon that likelihood.

4           256.    Defendant Ms. Kacie Thompson, knew or should have known her actions

5    violated the Rehabilitation Act and deprived Plaintiff of the ability to utilize accommodations

6    and participate in ODOC programs and activities to the same level as others in ODOC care. Once

7    Plaintiff requested with a need of accommodation Defendant had a mandatory obligation to

8    engage in good faith with an informal process to see if a reasonable accommodation would

9    have been possible. Knowing that, she still failed to act upon that likelihood.

10          257.    Defendant Ms. Marica Ventura, knew or should have known her actions violated

11   the Rehabilitation Act and deprived Plaintiff of the ability to utilize accommodations and

12   participate in ODOC programs and activities to the same level as others in ODOC care. As the

13   ODOC State wide ADA Coordinator who trains, supervise, and controls all subordinate

14   institution ADA Coordinators, she chose to condone the actions and sanctioned the behavior of

15   her subordinates continuing to deprive Plaintiff of equal access to accommodations. Once

16   Plaintiff requested with a need of accommodation Defendant had a mandatory obligation to

17   engage in good faith with an informal process to see if a reasonable accommodation would

18   have been possible. Knowing that, she still failed to act upon that likelihood.

19          258.    Defendant Ms. Erin Reyes, knew or should have known her actions violated the

20   Rehabilitation Act when she was made aware of Plaintiff's need for accommodations yet

21   allowed Plaintiff to be denied accommodations. Being the head administrator at TRCI, who

22   trains, supervise, and controls all subordinate ODOC employees, her actions and inactions

1   condoned and sanctioned the abuse suffered by the Plaintiff at the hands of her subordinates.

2   Knowing that, she still failed to act upon that likelihood.

3       259.    Defendant Mr. Troy Bowser, knew or should have known his actions violated the

4   Rehabilitation Act when he was made aware of Plaintiff's need for accommodations yet allowed

5   Plaintiff to be denied accommodations. Being the head administrator at TRCI, who trains,

6   supervise, and controls all subordinate ODOC employees, her actions and inactions condoned

7   and sanctioned the abuse suffered by the Plaintiff at the hands of her subordinates. Knowing

8   that, she still failed to act upon that likelihood.

9       260.    Defendant Ms. Ronda Davis, knew or should have known her actions violated the

10  Rehabilitation Act by putting restrictions and eligibility criteria on what accommodations could

11  be used for outside her role or ODOC Policy. Knowing that, she still failed to act upon that

12  likelihood.

13      261.    Defendant Ms. Houtz, knew or should have known her actions violated the

14  Rehabilitation Act by putting restrictions and eligibility criteria on what accommodations could

15  be used for outside her role or ODOC Policy. Knowing that, she still failed to act upon that

16  likelihood.

17      262.    Defendant Ms. Chavez, knew or should have known her actions violated the

18  Rehabilitation Act by putting restrictions and eligibility criteria on what accommodations could

19  be used for outside her role or ODOC Policy. Knowing that, she still failed to act upon that

20  likelihood.

21      263.    Defendant Ms. Darcy Hunter, knew or should have known her actions violated

22  the Rehabilitation Act when she denied the Plaintiff the ability to participate fully in programs

1    and activities with using ADA accommodations. Knowing that, they still failed to act upon that

2    likelihood.

3        264.    Defendant Mr. Mark Nooth, knew or should have known her actions violated the

4    Rehabilitation Act after he was made aware of violations to Federal Laws and Federal Rules in

5    Plaintiffs grievance appeal. The Defendant had the power to overturn Mr. Bowers decision to

6    deny Plaintiff access to ADA services As an ODOC Administrator with higher rank over all of the

7    defendants, who trains, supervise, and controls all subordinate ODOC employees, he chose to

8    condone the actions and sanctioned the behavior of his subordinates continuing to deprive

9    Plaintiff of equal access to accommodations. Knowing that, he still failed to act upon that

10   likelihood, and denied Plaintiff access to Accommodations.

11       265.    Plaintiff is entitled to compensatory damages for emotional pain, suffering,

12   inconvenience, mental anguish, loss of enjoyment of life, loss of equal access and participation

13   to programs, services, and other non-pecuniary losses in an amount to be proven at trial, here

14   alleged to be $1,500,000. Plaintiff should also be entitled to award of his economic loss in an

15   amount to be proved at trial, here alleged to be $400,000.

16       266.    To the extent any amount awarded to Plaintiff is for damages occurring prior to

17   the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate

18   from the date the damage occurred until the date of judgment.

19       267.    Plaintiff is entitled to an award of punitive damages in an amount to be fixed by

20   a jury at the time of trial, here alleged to be $5,000,000.

21       268.    Pursuant to 42 U.S.C. §§ 1988 and 2000e-5; 28 C.F.R. §35.175, Plaintiff is entitled

22   to an award of attorney's fees, expert witness fees, and all costs incurred.

1          269.    Plaintiff is entitled to post judgment interest on all damages, costs, expenses,

2     and fees from the date of judgment until the date paid.

1          **COUNT III- Due Process**

2    **(42 U.S.C. 1983—Violation of 5th & 14th Amendments of the U.S. Constitution; Or. Const. Art. I**
3                  **Sec. 13, 15, 16, 20 and 21—Due  Process)**

4    **(Against Defendants Ms. Linda Simon, Ms. Kacie Thompson, Ms. Marica Ventura, Mr. Kevin**
5                  **Jackson, Ms. Arnell Eynon, Mr. Craig Prins)**

6          270.    Plaintiff re-alleges all relevant prior paragraphs.

7          271.    The Fifth Amendment to the U.S. Constitution applies to the States through the

8    Fourteenth Amendment. Through its due process clause, the Fifth Amendment right to due

9    process of law, both procedurally and substantively.

10         272.    Defendants are required to not treat Plaintiff with "unnecessary rigor". Or.

11   Const. Art. 1 Sec. 13.

12         273.    Defendants are required to allow Plaintiff the ability for reformation and

13   personal responsibility. Or. Const. Art. Sec. 15.

14         274.    Defendants are prohibited from inflicting "cruel and unusual punishment." Or.

15   Const. Art. 1 Sec. 16.

16         275.    Defendants cannot implement rules that restrict disabled AICs from the same

17   privileges as other AICs. Or. Const. Art. 1 Sec. 20.

18         276.    Defendants cannot impose ex-post facto laws or rules. Or Const. Art. 1 Sec. 21.

19         277.    By taking the actions described above, including but not limited to: being

20   threatened with being put in solitary confinement for violating unwritten rules, subjecting

21   Plaintiff to 15 days of segregation without any accommodations or services which other

22   inmates were provided, conducting constitutionally deficient investigations, Defendants

23   intentionally violated Plaintiff's rights to be free of unlawful deprivation of due process. And

1    equal protection of the laws under the Fourteenth Amendment to the United States

2    Constitution. Defendants actions caused Plaintiff to suffer pain to his hand by forcing him to

3    write without the use of accommodations in programs and activities.

4        278.    Defendant Ms. Linda Simon subjected Plaintiff to treatment or conditions that

5    are atypical and a significant hardship in relation to the ordinary incidents of prison life, by

6    being the lead investigator into a discrimination complaint against herself, violating ODOC

7    policy. Conducting constitutionally deficient investigations. She failed to provide ODOC Policies,

8    ODOC Rules, TRCI Rules in an accessible format for Plaintiff after he requested them. The

9    Defendant did this violating Plaintiffs due process and equal protection of the law.

10       279.    Defendant Ms. Kacie Thompson subjected Plaintiff to treatment or conditions

11   that are atypical and a significant hardship in relation to the ordinary incidents of prison life, by

12   making Plaintiff follow vague unwritten rules, rules made without proper rule making

13   procedure and rules that violate valid Oregon Administrative Rules. Threatened Plaintiff with

14   being put in solitary confinement and taking away all accommodations for violating unwritten

15   *ex post facto* rules. Also denying Plaintiffs accommodation request without reason, Plaintiff

16   made several attempts to ascertain why, yet Defendant did not tell him, going against ODOC

17   Policy and Oregon Administrative Rule. Also, not providing ODOC Policies, ODOC Rules, TRCI

18   Rules in an accessible format for Plaintiff after he requested them. Defendant did this without

19   due process.

20       280.    Defendant Ms. Marica Ventura subjected Plaintiff to treatment or conditions

21   that are atypical and a significant hardship in relation to the ordinary incidents of prison life, by

22   denying Plaintiffs accommodation request without reason, Plaintiff made several attempts to

1    ascertain why, yet Defendant did not tell him, going against ODOC Policy and Oregon

2    Administrative Rule. Ms. Ventura did not provide ODOC Policies, ODOC Rules, TRCI Rules that

3    he is required to follow in an accessible format for Plaintiff after he requested them. Ms.

4    Ventura failed to stop Ms. Thompson from implementing unwritten rules made without proper

5    rule making procedure after she was informed. As the ODOC State wide ADA Coordinator who

6    supervise all institution ADA Coordinators, she chose to condone the actions and sanctioned

7    the behavior of her subordinates. Defendant did this without due process.

8        281.    Defendant Mr. Kevin Jackson subjected the Plaintiff to treatment or conditions

9    that are atypical and a significant hardship in relation to the ordinary incidents of prison life, by

10   assigning Ms. Simon as the lead investigator for a discrimination complaint about her, against

11   ODOC policy. Conducting constitutionally deficient investigations. Defendant did this violating

12   Plaintiffs due process.

13       282.    Defendant Ms. Arnell Eynon subjected Plaintiff to treatment or conditions that

14   are atypical and a significant hardship in relation to the ordinary incidents of prison life, by

15   allowing Mr. Jackson to assign Ms. Simon as the lead investigator for a discrimination complaint

16   about her, against ODOC policy. Also, by denying valid Grievances and Discrimination

17   Complaints by  Plaintiff, and allowing inmates to be informed of confidential information made

18   in those complaints. Ms. Eynon has a duty as the Grievance and Discrimination complaint

19   coordinator to make sure Grievances and Discrimination complaints are administered properly,

20   and failed to do so. By allowing constitutionally deficient investigations to be conducted.

21   Defendant did this violating Plaintiffs due process.

1     283.    Defendant Mr. Craig Prins subjected Plaintiff to treatment or conditions that are

2   atypical and a significant hardship in relation to the ordinary incidents of prison life, by allowing

3   Mr. Jackson to assign Ms. Simon as the lead investigator for a discrimination complaint about

4   her, against ODOC policy. Mr. Prins has a duty to act as the Inspector General to make sure

5   Grievances and Discrimination complaints are administered properly, and failed to do so. By

6   allowing constitutionally deficient investigations to be conducted Mr. Prins chose to condone

7   the actions and sanctioned the behavior of his subordinates. Defendant did this violating

8   Plaintiffs due process.

9     284.    Defendants' actions were malicious, deliberate, intentional, and embarked upon

10   with the knowledge of, or in conscious disregard of, the harm that would be and was inflicted

11   upon Plaintiff. As a result of said intentional conduct, Plaintiff is entitled to punitive damages in

12   an amount sufficient to punish defendants and to deter others from like conduct.

13     285.    As a result of Defendants' unnecessary deprivation of Plaintiff's constitutional

14   rights without due process, Plaintiff suffered and continues to suffer loss of access to equal

15   access and participation to programming, humiliation, anxiety, distress, and the right to be free

16   from discrimination or interference with is statutory rights.

17     286.    Plaintiff is entitled to compensatory damages for emotional pain, suffering,

18   inconvenience, mental anguish, loss of enjoyment of life, loss of equal access and participation

19   to programs, services, and other non-pecuniary losses in an amount to be proven at trial, here

20   alleged to be $1,500,000. Plaintiff should also be entitled to award of his economic loss in an

21   amount to be proved at trial, here alleged to be $400,000.

1       287.    To the extent any amount awarded to Plaintiff is for damages occurring prior to

2    the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate

3    from the date the damage occurred until the date of judgment.

4       288..   Plaintiff is entitled to an award of punitive damages in an amount to be fixed by

5    a jury at the time of trial, here alleged to be $5,000,000.

6       289.    Pursuant to 42 U.S.C. §§ 1988 and 2000e-5; 28 C.F.R. §35.175, Plaintiff is entitled

7    to an award of attorney's fees, expert witness fees, and all costs incurred.

8       290.    Plaintiff is entitled to post judgment interest on all damages, costs, expenses,

9    and fees from the date of judgment until the date paid.

1

2                                    **COUNT IV- Retaliation**

3    **(42 U.S.C. 1983—Violation of 1st & 14th Amendments of the U.S. Constitution; Or. Const. Art 1**
4              **Sec. 13, 15, 16, 20, and 21; 28 C.F.R. §35.134 – Retaliation)**

5    **(Against Defendants Ms. Linda Simon, Ms. Kacie Thompson, Ms. Ronda Davis, Ms. Arnell**
6                                           **Eynon)**

7         291.    Plaintiff re-alleges all relevant prior paragraphs.

8         292.    The First Amendment to the U.S. Constitution applies to the States through the

9    Fourteenth Amendment. The First Amendment prohibits retaliation against inmates by staff

10   because the inmate has engaged in protected activity, such as filing grievances and invoking

11   legal rights.

12        293.    Defendants are required to not treat Plaintiff with "unnecessary rigor". Or.

13   Const. Art. 1 Sec. 13.

14        294.    Defendants are required to allow Plaintiff the ability for reformation and

15   personal responsibility. Or. Const. Art. Sec. 15.

16        295.    Defendants are prohibited from inflicting "cruel and unusual punishment." Or.

17   Const. Art. 1 Sec. 16.

18        296.    Defendants cannot implement rules that restrict disabled AICs from the same

19   privileges as other AICs. Or. Const. Art. 1 Sec. 20.

20        297.    Defendants cannot impose ex-post facto laws or rules. Or Const. Art. 1 Sec. 21.

21        298.    By taking and allowing the actions described above, because Plaintiff used the

22   federally protected right of ADA accommodations, filed grievances and reported Defendants'

1  unlawful conduct, Defendants intentionally violated Plaintiffs' rights to be free from retaliation

2  for engaging in First Amendment protected activity.

3      299.    Defendant Ms. Linda Simon retaliated against Plaintiff after he participated in

4  the protected conduct of filing grievances. By denying Plaintiff access to accommodations, and

5  keeping accommodations away from him while he was in the Disciplinary Segregation Unit with

6  Covid-19, because of Plaintiffs participation in the protected conduct.

7      300.    Defendant Ms. Kacie Thompson retaliated against Plaintiff after he participated

8  in the protected conduct of filing a discrimination complaint. By informing Plaintiff he was no

9  longer allowed to format documents and denying Plaintiff the ability to use accommodations

10  for ODOC programs and activities, because of Plaintiffs participation in the protected conduct.

11      301.    Defendant Ms. Ronda Davis retaliated against Plaintiff after he participated in

12  the protected conduct of filing Discrimination Complaint. By informing other AICs of

13  confidential information Plaintiff put in the complaint, because of Plaintiffs participation in the

14  protected conduct.

15      302.    Defendant Ms. Arnell Eynon retaliated against Plaintiff after he participated in

16  the protected conduct of filing grievances and discrimination complaints. By allowing inmates

17  to be made aware of confidential information in the Discrimination Complaint, because of

18  Plaintiffs participation in the protected conduct.

19      303.    As a result of defendants' retaliation against Plaintiff, he suffered and continues

20  to suffer humiliation, anxiety, psychological trauma, distress, threat of being sent to solitary

21  confinement, threat of having accommodations taken away and loss of access to services,

1    activities and program for using ADA accommodations, and impairment of his personal dignity

2    and right to be free from discrimination depriving him of his legal rights and laws.

3         304.    Plaintiff is entitled to compensatory damages for emotional pain, suffering,

4    inconvenience, mental anguish, loss of enjoyment of life, loss of equal access and participation

5    to programs, services, and other non-pecuniary losses in an amount to be proven at trial, here

6    alleged to be $1,500,000. Plaintiff should also be entitled to award of his economic loss in an

7    amount to be proved at trial, here alleged to be $400,000.

8         305.    To the extent any amount awarded to Plaintiff is for damages occurring prior to

9    the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate

10   from the date the damage occurred until the date of judgment.

11        306.    Plaintiff is entitled to an award of punitive damages in an amount to be fixed by

12   a jury at the time of trial, here alleged to be $5,000,000.

13        307.    Pursuant to 42 U.S.C. §§ 1988 and 2000e-5; 28 C.F.R. §35.175, Plaintiff is entitled

14   to an award of attorney's fees, expert witness fees, and all costs incurred.

15        308.    Plaintiff is entitled to post judgment interest on all damages, costs, expenses,

16   and fees from the date of judgment until the date paid.

1           **COUNT V- Deliberate Indifference**

2    **(42 U.S.C. 1983—Violation of 8ᵗʰ & 14ᵗʰ Amendments of the U.S. Constitution; Or. Const. Art.**
3                    **I, Sec. 13, 15, 16, 20 and 21 – Deliberate Indifference)**

4    **(Against Defendants; ODOC; ODOC Medical Services; the State of Oregon; Ms. Sherry Iles; Ms.**
5    **Linda Simon; Ms. Kacie Thompson; Ms. Marica Ventura; Mr. Kevin Jackson; Ms. Johnson; Ms.**
6    **Ronda Davis; Ms. Houtz; Ms. Chavez; Ms. Darcy Hunter; Ms. Arnell Eynon; Mr. Craig Prins;**
7                              **Mr. Powleson)**

8           309.    Plaintiff re-alleges all relevant prior paragraphs.

9           310.    The Eighth Amendment to the U.S. Constitution applies to the States through the

10   Fourteenth Amendment. The Eight Amendment prohibits cruel and unusual punishments

11   inflicted against inmates by staff. Article 1, Section 16 to the Oregon Constitution prohibits

12   cruel and unusual punishments inflicted against inmates by staff. Article 1, Section 13 to the

13   Oregon Constitution prohibits prison staff from subjecting inmates to "unnecessary rigor."

14          311.    Defendants are required to not treat Plaintiff with "unnecessary rigor". Or.

15   Const. Art. 1 Sec. 13.

16          312.    Defendants are required to allow Plaintiff the ability for reformation and

17   personal responsibility. Or. Const. Art. Sec. 15.

18          313.    Defendants cannot implement rules that restrict disabled AICs from the same

19   privileges as other AICs. Or. Const. Art. 1 Sec. 20.

20          314.    Defendants cannot impose ex-post facto laws or rules. Or Const. Art. 1 Sec. 21.

21          315.    By participating ᵃⁿᵈ/ₒᵣ allowing the actions described above, defendants

22   intentionally violated Plaintiffs' rights to be free from cruel and unusual punishment against Or.

23   Const. Art. 1 Sec. 16. and 8ᵗʰ Amend. U.S. Const.. Causing, in part, pain to Plaintiffs hand by

24   forcing him to write without the use of accommodations in programs and activities.

1     316.   Defendant State of Oregon operates Oregon Department of Corrections, knew or

2  should have known a violation of Federally protected rights was substantially likely when it

3  denied Plaintiff access to ADA services and accommodations. Defendant knew that they are

4  required by law to provide ADA series and accommodations. Defendant failed to do so by not

5  providing Plaintiff with accommodations or services against ODOC policy's, Oregon

6  Administrative Rules, Oregon Laws, Federal Rules, and Federal Laws.

7     317.   Defendant Oregon Department of Corrections Medical Services, knew or should

8  have known a violation of Federally protected rights was substantially likely by not providing

9  Plaintiffs BHS Medical Provider Dr. Humann with documentation she requested numerous

10  times over the course of 18 months which she needed to make an accurate diagnosis.

11  Defendant knew they should have acted but failed to do so by not providing Dr. Humann

12  pertinent medical information located in Plaintiffs medical file and denying Plaintiff had any

13  learning disabilities preventing Plaintiff access to ADA accommodations.

14     318.   Defendant Ms. Sherry Iles, knew or should have known a violation of Federally

15  protected rights was substantially likely by repeatedly denying Plaintiff access to ADA services

16  and accommodations. Defendant knew she should have acted but failed to do so by depriving

17  Plaintiff accommodations for nearly 792 days. Defendant knew but did not follow ODOC

18  policy's, Oregon Administrative Rules, Oregon Laws, Federal Rules, and Federal Laws in her role

19  as an ADA Coordinator which harmed Plaintiff.

20     319.   Defendant Ms. Linda Simon, knew or should have known a violation of Federally

21  protected rights was substantially likely by repeatedly denying Plaintiff access to ADA services

22  and accommodations. Defendant knew she should have acted but failed to do so by depriving

1    Plaintiff accommodations for nearly 792 days. Defendant knew but did not follow ODOC

2    policy's, Oregon Administrative Rules, Oregon Laws, Federal Rules, and Federal Laws in her role

3    as an ADA Coordinator which harmed Plaintiff.

4        320.    Defendant Ms. Kacie Thompson, knew or should have known a violation of

5    Federally protected rights was substantially likely by denying Plaintiff access to ADA services

6    and accommodations, denying the use of accommodations for programs and activities and

7    allowing other staff and inmates to intimidate the Plaintiff for using ADA services. Defendant

8    knew she should have acted but failed to do so by not providing Plaintiff with accommodations

9    which ODOC policy's, Oregon Administrative Rules, Oregon Laws, Federal Rules, and Federal

10   Laws state are appropriate accommodations and failing to take any action from staff and

11   inmates who intimidated Plaintiff.

12       321.    Defendant Ms. Marica Ventura, knew or should have known a violation of

13   Federally protected rights was substantially likely by denying Plaintiff access to ADA services

14   and accommodations and allowing other staff and inmates to intimidate Plaintiff for using ADA

15   services. Defendant knew she should have acted but failed to do so by not providing Plaintiff

16   with accommodations which ODOC policy's, Oregon Administrative Rules, Oregon Laws, Federal

17   Rules, and Federal Laws state are appropriate accommodations and failing to take any action

18   against staff and inmates who intimidated Plaintiff. As the ODOC State wide ADA Coordinator

19   who supervise all institution ADA Coordinators, she chose to condone the actions and

20   sanctioned the behavior of her subordinates.

21       322.    Defendant Mr. Kevin Jackson, knew or should have known a violation of

22   Federally protected rights was substantially likely by allowing Ms. Simon to be a lead

1    investigator for a complaint of herself. Defendant knew they should have acted but failed to do

2    so by not following ODOC Policy, and correcting the investigation.

3        323.    Defendant Ms. Johnson, knew or should have known a violation of Federally

4    protected rights was substantially likely by making a diagnosis outside the scope of practice of a

5    Registered Nurse of Plaintiff having "mild" dyslexia. The Defendant knew she should have acted

6    but failed to do so by ignoring documentation in Plaintiffs medical file made by a qualified

7    psychologist, overriding that diagnoses preventing Plaintiff from accessing ADA

8    accommodations for 18 months.

9        324.    Defendant Ms. Ronda Davis, knew or should have known a violation of Federally

10    protected rights was substantially likely by implementing unwritten rules Plaintiff was forced to

11    follow, notifying inmates of confidential complaints, and intimidating and allowing inmates who

12    worked for her to intimidate Plaintiff. Defendant knew they should have acted but failed to do

13    so by creating a hostile environment for Plaintiff.

14        325.    Defendant Ms. Houtz, knew or should have known a violation of Federally

15    protected rights was substantially likely by allowing derogatory signs to be posted in the Law

16    Library. Defendant knew they should have acted but failed to do so by allowing an inmate to

17    put up that sign.

18        326.    Defendant Ms. Chavez, knew or should have known a violation of Federally

19    protected rights was substantially likely by allowing derogatory signs to be posted in the Law

20    Library. Defendant knew they should have acted but failed to do so by allowing an inmate to

21    put up that sign, and kept it posed.

1    327.    Defendant Ms. Darcy Hunter, knew or should have known a violation of Federally

2   protected rights was substantially likely by denying Plaintiff access for ADA accommodations for

3   ODOC programs $^{and}/_{or}$ activities. Defendant knew she should have acted but failed to do so by

4   not following ODOC policy's, Oregon Administrative Rules, Oregon Laws, Federal Rules, and

5   Federal Laws and denying Plaintiff they ability to participate equally in programs $^{and}/_{or}$ activities.

6    328.    Defendant Ms. Arnell Eynon, knew or should have known a harm to Federally

7   protected rights was substantially likely by allowing Mr. Jackson to make Ms. Simon the lead

8   investigator in a complaint about her. Defendant knew they should have acted but failed to do

9   so by not following ODOC Policy, and correcting the investigation. Ms. Eynon has a duty to act

10   in her role as the Grievance and Discrimination Complaint Coordinator.

11    329.    Defendant Mr. Craig Prins, knew or should have known a violation of Federally

12   protected rights was substantially likely by allowing Mr. Jackson to make Ms. Simon the lead

13   investigator in a complaint about her. Defendant knew they should have acted but failed to do

14   so by not following ODOC Policy, and correcting the investigation. Mr. Prins had a duty to act in

15   his role as the ODOC Inspector General.

16    330.    As a result of defendants' deliberate indifference against Plaintiff, he suffered

17   and continues to suffer humiliation, anxiety, distress, psychological trauma, threat of being sent

18   to solitary confinement and loss of access to services, activities and programs for using ADA

19   accommodations, and impairment of his personal dignity and right to be free from

20   discrimination and deprivation of the laws and Constitutional Rights.

21    331.    Plaintiff is entitled to compensatory damages for emotional pain, suffering,

22   inconvenience, mental anguish, loss of enjoyment of life, loss of equal access and participation

1    to programs, services, and other non-pecuniary losses in an amount to be proven at trial, here

2    alleged to be $1,500,000. Plaintiff should also be entitled to award of his economic loss in an

3    amount to be proved at trial, here alleged to be $400,000.

4          332.    To the extent any amount awarded to Plaintiff is for damages occurring prior to

5    the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate

6    from the date the damage occurred until the date of judgment.

7          333.    Plaintiff is entitled to an award of punitive damages in an amount to be fixed by

8    a jury at the time of trial, here alleged to be $5,000,000.

9          334.    Pursuant to 42 U.S.C. §§ 1988 and 2000e-5; 28 C.F.R. §35.175, Plaintiff is entitled

10    to an award of attorney's fees, expert witness fees, and all costs incurred.

11          335.    Plaintiff is entitled to post judgment interest on all damages, costs, expenses,

12    and fees from the date of judgment until the date paid.

1          **COUNT VI- Intentional Discrimination**

2    **(42 U.S.C. 1983—Violation of 8th & 14th Amendments of the United States Constitution; Or.**
3    **Const. Art. I, Sec. 13, 15, 16, 20 and 21; and 28 C.F.R. §35.130– Intentional Discrimination)**

4    **(Against Defendants Oregon Department of Corrections and the State of Oregon, Ms. Marica**
5    **Ventura, Ms. Houtz, and Ms. Chavez)**

6        336.    Plaintiff re-alleges all relevant prior paragraphs.

7        337.    The Eighth Amendment to the U.S. Constitution applies to the States through the

8    Fourteenth Amendment. The Eighth Amendment prohibits cruel and unusual punishments

9    inflicted against inmates by staff. Article 1, Section 16 to the Oregon Constitution prohibits

10   cruel and unusual punishments inflicted against inmates by staff. Article 1, Section 13 to the

11   Oregon Constitution prohibits prison staff from subjecting inmates to "unnecessary rigor."

12       338.    Defendants are required to allow Plaintiff the ability for reformation and

13   personal responsibility. Or. Const. Art. Sec. 15.

14       339.    Defendants cannot implement rules that restrict disabled AICs from the same

15   privileges as other AICs. Or. Const. Art. 1 Sec. 20.

16       340.    Defendants cannot impose ex-post facto laws or rules. Or Const. Art. 1 Sec. 21.

17       341.    By taking and allowing the actions described above, Defendants failed to use

18   reasonable care for which a reasonably prudent person would have done.

19       342.    Defendant Oregon Department of Corrections and the State of Oregon, provides

20   different or separate aids, benefits, or services to individuals with disabilities who are deaf and

21   hearing disabled inmates compared to all other disabled inmates. By Oregon Administrative

22   Rules and ODOC policy that giving deaf and hearing disabled inmate's preference in their choice

1   of accommodation, and not giving other disabled inmates preference in their choice. 28 C.F.R.

2   §35.130(b)(1)(iv).

3       343.   Defendant Ms. Marica Ventura treated Plaintiff who was in the same situation as

4   typical inmates at TRCI by failing to remove the derogatory sign depicting Plaintiffs disability

5   when she was made aware of it. As the ODOC State wide ADA Coordinator who supervise all

6   institution ADA Coordinators, she chose to condone the actions and sanctioned the behavior of

7   her subordinates. This treatment was done intentionally because of Plaintiffs disability causing

8   Plaintiff to suffer humiliation and sever psychological trauma.

9       344.   Defendant Ms. Houtz treated Plaintiff who was in the same situation as typical

10   inmates at TRCI by giving an inmate permission to post a derogatory sign of Plaintiff. This

11   treatment was done intentionally because of Plaintiffs disability causing Plaintiff to suffer

12   humiliation and sever psychological trauma.

13       345.   Defendant Ms. Chavez treated Plaintiff who was in the same situation as typical

14   inmates at TRCI by giving an inmate permission to post a derogatory sign of Plaintiff. This

15   treatment was done intentionally because of Plaintiffs disability causing Plaintiff to suffer

16   humiliation and sever psychological trauma.

17       346.   As a result of defendants' discrimination against Plaintiff, he has suffered and

18   continues to suffer humiliation, anxiety, distress, psychological trauma and impairment of his

19   personal dignity and right to be free from discrimination or interference with his statutory and

20   Constitutional rights.

21       347.   Plaintiff is entitled to compensatory damages for emotional pain, suffering,

22   inconvenience, mental anguish, loss of enjoyment of life, loss of equal access and participation

1    to programs, services, and other non-pecuniary losses in an amount to be proven at trial, here

2    alleged to be $1,500,000. Plaintiff should also be entitled to award of his economic loss in an

3    amount to be proved at trial, here alleged to be $400,000.

4         348.    To the extent any amount awarded to Plaintiff is for damages occurring prior to

5    the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate

6    from the date the damage occurred until the date of judgment.

7         349.    Plaintiff is entitled to an award of punitive damages in an amount to be fixed by

8    a jury at the time of trial, here alleged to be $5,000,000.

9         350.    Pursuant to 42 U.S.C. §§ 1988 and 2000e-5; 28 C.F.R. §35.175, Plaintiff is entitled

10   to an award of attorney's fees, expert witness fees, and all costs incurred.

11        351.    Plaintiff is entitled to post judgment interest on all damages, costs, expenses,

12   and fees from the date of judgment until the date paid.

1          **COUNT VII- Negligence**

2    **(42 U.S.C. 1983—Violation of 8ᵗʰ & 14ᵗʰ Amendments of the United States Constitution; Or.**

3          **Const. Art. I, Sec. 13, 15, 16, 20 and 21 – Negligence)**

4      **(Against Defendants Ms. Sherry Iles, Ms. Johnson, Ms. Darcy Hunter, Mr. Powleson)**

5          352.    Plaintiff re-alleges all relevant prior paragraphs.

6          353.    The Eighth Amendment to the U.S. Constitution applies to the States through the

7    Fourteenth Amendment. The Eighth Amendment prohibits cruel and unusual punishments

8    inflicted against inmates by staff. Article 1, Section 16 to the Oregon Constitution prohibits

9    cruel and unusual punishments inflicted against inmates by staff. Article 1, Section 13 to the

10   Oregon Constitution prohibits prison staff from subjecting inmates to "unnecessary rigor."

11         354.    Defendants are required to allow Plaintiff the ability for reformation and

12   personal responsibility. Or. Const. Art. Sec. 15.

13         355.    Defendants cannot implement rules that restrict disabled AICs from the same

14   privileges as other AICs. Or. Const. Art. 1 Sec. 20.

15         356.    Defendants cannot impose ex-post facto laws or rules. Or Const. Art. 1 Sec. 21.

16         357.    By taking and allowing the actions described above, Defendants failed to use

17   reasonable care for which a reasonable person would have done. Causing in part pain in

18   Plaintiffs hand by forcing him to write without the use of accommodations in programs and

19   activities.

20         358.    Defendant Ms. Sherry Iles had a duty to provide Plaintiff with accommodations

21   and breached that duty. The actions of Defendants breach of duty to Plaintiff caused damage to

22   Plaintiff by preventing him from receiving ADA accommodations for 792 days.

1       359.    Defendant Ms. Johnson had a duty to provide medical knowledge within her

2    scope of practice, and to provide accurate information to the ADA Coordinator but breached

3    that duty. Ms. Johnson identified Plaintiff as having "mild" dyslexia, a diagnosis she is not

4    trained nor legally able to make. At the time Ms. Johnson made this claim, documentation was

5    in Plaintiffs medical file that proved otherwise. The actions of Defendant's breach of duty to

6    Plaintiff, caused damage to Plaintiff. He was forced to go without accommodations for over 18

7    months due to her inaccurate claim.

8       360.    Defendant Ms. Darcy Hunter had a duty to allow Plaintiff to use ADA

9    accommodations for Programs and activities which she over saw and Plaintiff was participating

10   in and breached that duty. The actions of Defendants breach of duty to Plaintiff caused damage

11   in the form of putting sigma on Plaintiff in participating in programs and preventing him from

12   participating as fully in the program as other inmates violating OAR 291-145-0005(3)(a).

13      361.    Defendant Mr. Powleson had a duty to facilitate inmates at TRCI with BHS care

14   and counsel subordinates on proper protocols and procedures and breached that duty. The

15   actions of Defendant's breach of duty to Plaintiff caused damage in the form of denying Plaintiff

16   access to BHS services in order to receive ADA accommodations, and instructing Ms. Truax to

17   stop helping Plaintiff with doing so. Causing Plaintiff to go without ADA accommodations for 18

18   months.

19      362.    As a result of defendants' negligence against Plaintiff, he suffered and continues

20   to suffer humiliation, anxiety, distress, psychological truma, threat of being sent to solitary

21   confinement and loss of access to programming for using ADA accommodations, and

1    impairment of his personal dignity and right to be free from discrimination or interference with

2    his statutory rights.

3        363.    Plaintiff is entitled to compensatory damages for emotional pain, suffering,

4    inconvenience, mental anguish, loss of enjoyment of life, loss of equal access and participation

5    to programs, services, and other non-pecuniary losses in an amount to be proven at trial, here

6    alleged to be $1,500,000. Plaintiff should also be entitled to award of his economic loss in an

7    amount to be proved at trial, here alleged to be $400,000.

8        364.    To the extent any amount awarded to Plaintiff is for damages occurring prior to

9    the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate

10    from the date the damage occurred until the date of judgment.

11        365.    Plaintiff is entitled to an award of punitive damages in an amount to be fixed by

12    a jury at the time of trial, here alleged to be $5,000,000.

13        366.    Pursuant to 42 U.S.C. §§ 1988 and 2000e-5; 28 C.F.R. §35.175, Plaintiff is entitled

14    to an award of attorney's fees, expert witness fees, and all costs incurred.

15        367.    Plaintiff is entitled to post judgment interest on all damages, costs, expenses,

16    and fees from the date of judgment until the date paid.

1            **COUNT VIII- Obstructing Confidential Communications**

2      **(42 U.S.C. 1983—Violation of 1st & 14th Amendments of the United States Constitution; Or.**
3              **Const. Art. I, Sec. 13—Obstructing Confidential Communications)**

4      **(Against Defendants Oregon Department of Corrections and the State of Oregon, Ms. Fogg,**
5      **Ms. Ronda Davis, Ms. Marica Ventura, Ms. Houtz, and Ms. Chavez Ms. Linda Simon, Ms. Kacie**
6                            **Thompson)**

7            368.    Plaintiff re-alleges all relevant prior paragraphs.

8            369.    The First Amendment to the U.S. Constitution applies to the States through the

9      Fourteenth Amendment. The First Amendment prohibits states from obstructing confidential

10     communications with attorneys by staff. Article 1, Section 13 to the Oregon Constitution

11     prohibits prison staff from subjecting inmates to "unnecessary rigor."

12           370.    By taking and allowing the actions described above, because Plaintiff used the

13     federally protected right of ADA accommodations, filed grievances and reported Defendants'

14     unlawful conduct, Defendants intentionally violated Plaintiffs' rights to be free from obstruction

15     of confidential communications with attorneys. Defendants blocked and prevented

16     communications and meetings between Plaintiff, Attorneys, and Officials, because of Plaintiffs

17     participation in the protected conduct.

18           371.    Defendant, Ms. Fogg, intentionally interfered with, subverted and obstructed

19     Plaintiffs confidential communications with attorneys after he participated in the protected

20     conduct of filing grievances. By allegedly denying Plaintiff access to meeting with and

21     communication with his attorney, because of Plaintiffs participation in the protected conduct.

22           372.    Defendant, Ms. Linda Simon, obstructed Plaintiffs confidential communications

23     with attorneys after he participated in the protected conduct of filing grievances. By allegedly

24     denying Plaintiff access to meeting and communicating with his attorney. And allegedly

1   blocking confidential communications with oversight organizations, because of Plaintiffs

2   participation in the protected conduct.

3        373.    Defendant, Ms. Kacie Thompson, obstructed Plaintiffs confidential

4   communications with attorneys by allegedly asking Law Library Coordinators to forward

5   Plaintiffs communications to her including communications with attorneys and Officials,

6   because of Plaintiffs participation in the protected conduct.

7        374.    Defendant, Ms. Marica Ventura, allegedly obstructed Plaintiffs

8   confidential communications with attorneys by not taking steps to stop and mitigate

9   violations to Plaintiffs confidential communications when she was made aware Ms.

10  Thompson allegedly asking Law Library Coordinators to forward Plaintiffs

11  communications to her including communications with attorneys and Officials, because

12  of Plaintiffs participation in the protected conduct. As the ODOC State wide ADA

13  Coordinator who supervise all institution ADA Coordinators, she chose to condone the

14  actions and sanctioned the behavior of her subordinates.

15       375.    Defendant, Ms. Chavez, obstructed Plaintiffs confidential

16  communications with attorneys by allegedly forwarding Plaintiffs confidential

17  communications with attorneys and Officials to Ms. Thompson, because of Plaintiffs

18  participation in the protected conduct.

19       376.    Defendant, Ms. Houtz, obstructed Plaintiffs confidential communications

20  with attorneys by allegedly forwarding Plaintiffs confidential communications with

21  attorneys and Officials to Ms. Thompson, because of Plaintiffs participation in the

22  protected conduct.

1   377. Defendant Ms. Ronda Davis retaliated against Plaintiff after he participated in

2 the protected conduct of filing Discrimination Complaint. By allegedly informing other AICs of

3 confidential information Plaintiff put in the complaint, because of Plaintiffs participation in the

4 protected conduct.

5   378. As a result of defendants' retaliation against Plaintiff, he suffered and continues

6 to suffer humiliation, anxiety, psychological trauma, distress, threat of being sent to solitary

7 confinement, threat of having accommodations taken away and loss of access to programming

8 for using ADA accommodations, and impairment of his personal dignity and right to be free

9 from discrimination or interference with his statutory rights.

10   379. Plaintiff is entitled to compensatory damages for emotional pain, suffering,

11 inconvenience, mental anguish, loss of enjoyment of life, loss of equal access and participation

12 to programs, services, and other non-pecuniary losses in an amount to be proven at trial, here

13 alleged to be $1,500,000. Plaintiff should also be entitled to award of his economic loss in an

14 amount to be proved at trial, here alleged to be $400,000.

15   380. To the extent any amount awarded to Plaintiff is for damages occurring prior to

16 the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate

17 from the date the damage occurred until the date of judgment.

18   381. Plaintiff is entitled to an award of punitive damages in an amount to be fixed by

19 a jury at the time of trial, here alleged to be $5,000,000.

20   382. Pursuant to 42 U.S.C. §§ 1988 and 2000e-5; 28 C.F.R. §35.175, Plaintiff is entitled

21 to an award of attorney's fees, expert witness fees, and all costs incurred.

1          383.    Plaintiff is entitled to post judgment interest on all damages, costs, expenses,

2     and fees from the date of judgment until the date paid.

1           **COUNT IV- Obstructing Freedom of Speech**

2    **(42 U.S.C. 1983—Violation of 1st & 14th Amendments of the United States Constitution;**
3       **Article I, Section 8, of the Oregon Constitution—Obstructing Freedom of Speech)**

4    **(Against Defendants Oregon Department of Corrections and the State of Oregon, Ms. Marica**
5                    **Ventura and Ms. Kacie Thompson)**

6        384.    Plaintiff re-alleges all relevant prior paragraphs.

7        385.    The First Amendment to the U.S. Constitution applies to the States through the

8    Fourteenth Amendment. The First Amendment prohibits states from restricting the freedom of

9    speech and written expression. Article 1, Section 8 to the Oregon Constitution prohibits ODOC

10   from restricting the freedom of speech and written expression.

11       386.    Defendant Oregon Department of Corrections and the State of Oregon had a

12   duty to protect Plaintiffs Constitutional rights to write and speak freely and breached that duty.

13   The Defendant acted against Plaintiff after he participated in the protected conduct of using

14   ADA Accommodations. By informing Plaintiff he was not allowed to write freely on whatever

15   subject whatsoever while using ADA accommodations and denying Plaintiff the ability to use

16   accommodations for ODOC programs and activities, because of Plaintiffs participation in the

17   protected conduct.

18       387.    Defendant Ms. Marica Ventura working for the as an employee for ODOC and

19   the State of Oregon had a duty to protect Plaintiffs Constitutional rights to write and speak

20   freely and breached that duty. Ms. Ventura acted against Plaintiff after he participated in the

21   protected conduct of using ADA Accommodations. By informing Plaintiff he was not allowed to

22   write freely on whatever subject whatsoever while using ADA accommodations and denying

23   Plaintiff the ability to use accommodations for ODOC programs and activities, because of

1   Plaintiffs participation in the protected conduct. As the ODOC State wide ADA Coordinator who

2   supervise all institution ADA Coordinators, she chose to condone the actions and sanctioned

3   the behavior of her subordinates.

4       388.    Defendant Ms. Kacie Thompson as an employee of ODOC and the State of

5   Oregon had a duty to protect Plaintiffs Constitutional rights to write and speak freely and

6   breached that duty. Ms. Thompson acted against Plaintiff after he participated in the protected

7   conduct of using ADA Accommodations. By informing Plaintiff he was not allowed to write

8   freely on whatever subject whatsoever while using ADA accommodations and denying Plaintiff

9   the ability to use accommodations for ODOC programs and activities, because of Plaintiffs

10  participation in the protected conduct.

11      389.    As a result of defendants' restricting Plaintiffs the ability to speak and write

12  freely, he suffered and continues to suffer humiliation, anxiety, psychological trauma, distress,

13  threat of being sent to solitary confinement, threat of having accommodations taken away and

14  loss of access to programming for using ADA accommodations, and impairment of his personal

15  dignity and right to be free from discrimination or interference with his statutory rights.

16      390.    Plaintiff is entitled to compensatory damages for emotional pain, suffering,

17  inconvenience, mental anguish, loss of enjoyment of life, loss of equal access and participation

18  to programs, services, and other non-pecuniary losses in an amount to be proven at trial, here

19  alleged to be $1,500,000. Plaintiff should also be entitled to award of his economic loss in an

20  amount to be proved at trial, here alleged to be $400,000.

1      391.    To the extent any amount awarded to Plaintiff is for damages occurring prior to

2    the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate

3    from the date the damage occurred until the date of judgment.

4      392.    Plaintiff is entitled to an award of punitive damages in an amount to be fixed by

5    a jury at the time of trial, here alleged to be $5,000,000.

6      393.    Pursuant to 42 U.S.C. §§ 1988 and 2000e-5; 28 C.F.R. §35.175, Plaintiff is entitled

7    to an award of attorney's fees, expert witness fees, and all costs incurred.

8      394.    Plaintiff is entitled to post judgment interest on all damages, costs, expenses,

9    and fees from the date of judgment until the date paid.

**PRAYER FOR RELIEF**

Plaintiff prays for the following relief against Defendants:

WHEREFORE, Plaintiff seeks judgment against Defendants, jointly and severally, and respectfully request that this Court enter an Order as follows:

a) Declare that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the United States;

b) Declare that Defendants have intentionally discriminated against Plaintiff and violated Title II of the ADA and the Rehabilitation Act by:

    i. Failing to conduct an individualized assessment of disabled prisoners to determine the appropriate auxiliary aids and accommodations that would ensure effective communication and equal access to and benefit of ODOC's services;

    ii. Failing to provide accommodations and auxiliary aids for learning disabilities to prisoners that would ensure effective participation and communication and equal access to and the benefit of ODOC's services;

    iii. Housing disabled inmates in solitary confinement without accommodations;

    iv. Giving preference of accommodations for one category of disabled prisoners over other categories of disabled prisoners;

    v. Treating accommodations as a privilege instead of a federal right; and

    vi. Punishing disabled inmates with learning disabilities in retaliation for invoking their right under the ADA, Rehabilitation Act, and U.S. Constitution.

c) Declare injunctive and other equitable relief as the Court deems appropriate, including but not limited to, an Order requiring all Defendants to:

    i. Conduct individualized assessments of the appropriate auxiliary aids, and accommodations that would ensure effective communication and equal access to and benefit of ODOC's services for disabled prisoners;

    ii. Provide accommodations and auxiliary aids to learning disabled prisoners that would ensure effective communication, reading, learning, writing, and equal access to and benefit of ODOC's services. Including but not

limited to Text-to-Speech software and devices such as NaturalReader® software and IntelReader® device;

iii.     Provide Plaintiff with NaturalReader® software or equivalent text-to-speech soft and an IntelReader® device;

iv.     Stop the housing or disabled inmates in solitary confinement without accommodations;

v.      Stop punishing disabled inmates with learning disabilities in retaliation for invoking their rights under the ADA and U.S. Constitution;

vi.     Stop using documentation obligations as a reason to deny inmates from qualifying for ADA services due to ODOC reluctance to conduct individualized assessment for prisoners with learning disabilities;

vii.    Establish policies to accommodate disabled prisoners, and require ODOC to properly train ADA coordinators, health service and behavioral services workers;

viii.   Stop treating accommodations as a privilege and treat them as a federally mandated right;

ix.     Establish a policies and procedures for ensuring learning disabled prisoners (including but not limited to those that have reading and writing disabilities such as dyslexia and dysgraphia) will have appropriate auxiliary aids and accommodations to ensure that they have equal access to including but not limited to  programs, actives, services, academic and vocational education, mail, library, law library, personal writings, and approved postsecondary and correspondence course while in ODOC custody;

x.      Provide training on learning disabilities, executive functioning, and working memory issues to all staff who interact with prisoners on how to work best with this population;

xi.     Give primary consideration to disabled prisoners preferred auxiliary aids; and

xii.    Stop charging prisoners to use ADA accommodations.

d)      A sum which will fully compensate Plaintiff for his non-economic damages in a sum that is just, as determined by a jury, here alleged to not exceed $1,500,000;

e)    A sum which will fully compensate Plaintiff for his economic damages in a sum that is just, as determined by a jury, here alleged to not exceed $1,500,000;

f)    Punitive damages in an amount to be fixed by the jury at the time of trial, here alleged to be $5,000,000;

g)    Plaintiff's costs and disbursements incurred herein;

h)    Plaintiff's attorney fees; and

i)    For such other and further relief as the Court may deem just and equitable.

**Plaintiff demands a trial by Jury.**

**VERICIFCATION**

Pursuant to 28 U.S.C. §1746, I declare and verify under penalty of perjury under the laws of the United States of America and that the foregoing is true and correct to the best of my knowledge.

**Executed this 8ᵗʰ day of January, 2024.**

Respectfully Submitted,

Wyatt DeRemer
Sid # 18961221
Two Rivers Corr. Inst.
82911 Beach Access Rd.
Umatilla, OR 97882

# CERTIFICATE OF SERVICE

CASE NAME: _DeRemer_ v. _ODoC  et  al._

CASE NUMBER: (if known) _____

COMES NOW, _Wyatt  DeRemer_, and certifies the following:

That I am incarcerated by the Oregon Department of Corrections at Two Rivers Correctional Institution. (TRCI)

That on the _12_ day of _January_, 20 _24_, I personally gave Two Rivers Correctional Institution's e-filing service a true copy OF THE FOLLOWING:

| | |
|---|---|
| **1.** | Complaint |
| **2.** | |
| **3.** | |
| **4.** | |
| **5.** | |
| **6.** | |
| **7.** | |
| **8.** | |
| **9.** | |

_____
(Signature)

Print Name: _Wyatt DeRemer_

SID #: _1896122_

2 of 6